

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MEL:EMR/JEA
F. #2018R02232

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 4, 2021

<u>By Hand and ECF</u>

Honorable Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Jacob Daskal
              <u>Docket No. 21-CR-110 (NGG)</u>

Dear Judge Kuo:

      The government respectfully submits this letter in support of its application for the entry of a permanent order of detention for the defendant Jacob Daskal. Between August and November 2017, the defendant, then age 59, repeatedly sexually exploited a 15 year-old victim. During that time, the defendant travelled interstate to have sex with the victim and transported the victim interstate for the purpose of sex. On February 26, 2021, a grand jury in the Eastern District of New York returned an indictment charging the defendant with one count of using an interstate facility to coerce a minor to engage in illicit sexual conduct, in violation of Title 18, United States Code, Section 2422(b), one count of transportation of a minor with intent to engage in criminal sexual activity, in violation of Title 18, United States Code, Section 2423(a), and one count of travelling with intent to engage in illicit sexual conduct, in violation of Title 18, United States Code, Section 2423(b).

      For the reasons set forth below, the government submits that the defendant cannot overcome the presumption that he is a danger to the community and a risk of flight, and no combination of conditions can secure the safety of the community.

A.    <u>Background</u>

      Between August and November 2017, the defendant had a sexual relationship with a then 15 year-old girl whom he took in to his home and groomed for sex. During the summer of 2017, the sexual relationship occurred primarily at the defendant's house in Brooklyn, New York, and at his summer house in South Fallsburg, New York. The defendant frequently transported the victim between those locations by way of New Jersey.

At the end of August, the defendant, his family and the victim returned full-time to his house in Brooklyn, where the abuse continued. As the school year started, the defendant helped the victim find a new school in Chicago, Illinois, and, in October 2017, she moved there to attend that school and live with another family. While the victim was in Chicago, the defendant and the victim communicated via text message and over Skype video chat. The defendant requested that the victim pose nude for him during video chats and send him nude photographs.

On or about November 5, 2017, the defendant traveled to Chicago for a day trip to visit the victim. The defendant booked a hotel room in Chicago, and he brought the victim to that room for sexual intercourse and oral sex. He flew back to New York that evening less than ten hours after he had arrived.

Throughout the abuse, the defendant regularly told the victim that he loved her. He also threatened the victim not to tell anyone about their sexual relationship. In addition, at the time of the charged conduct, the defendant was the founder and chief of the Boro Park Shomrim Society, a private, Orthodox Jewish crime-patrol group associated with the 66th Police Precinct of the New York City Police Department ("NYPD"). The victim was afraid of the defendant because of his position of power in her community. In the spring of 2018, however, after the defendant continually tried to contact and follow the victim, the victim confided in a mentor who helped her report the defendant's actions to the police. In May 2018, NYPD officers arrested the defendant. Following the defendant's arrest, he was indicted by a Kings County Grand Jury on several charges, including Rape in the Third Degree, in violation of New York State Penal Law § 130.25(2). The defendant was released on bail on May 11, 2018, and the case is currently pending in Kings County Supreme Court.[1]

As noted above, a grand jury in the Eastern District of New York returned the instant indictment on February 26, 2021. Earlier today, federal agents arrested the defendant at his home in Brooklyn.

B.   Discussion

    a. Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A rebuttable presumption of dangerousness and risk of flight arises when a defendant is charged with an offense involving a minor victim under Title 18, United States Code, Sections 2422 and 2423. 18 U.S.C. § 3142(e)(3)(E). The presumption means that the Court must initially assume there is "no condition or combination of conditions that will reasonably

---

[1] The Kings County District Attorney's Office has informed the government that its case will be dismissed in light of the instant federal charges.

assure the appearance of the person as required and the safety of any other person and the community." Id.  The defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).  Even if the defendant were to meet his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

While a finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), risk of flight can be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).  The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Four factors guide the Court's determination of whether a defendant should be released on bail:

> (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . firearm . . .";
> 
> (2) "the weight of the evidence against the person";
> 
> (3) "the history and characteristics of the person, including . . . the person's character, . . . past conduct, . . . [and] criminal history, and record concerning appearance at court proceedings"; and
> 
> (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g).

  b.  Argument

Each of the factors referenced above weighs heavily against pre-trial release.  First, the conduct with which the defendant is charged is incredibly serious.  The defendant abused his position of power in the Orthodox Jewish community to groom a vulnerable 15 year-old victim for a sexual relationship.  The defendant used false promises of love and serious threats to carry out that relationship with the victim over several months and across state lines.

Second, the weight of the evidence is strong. The government's evidence includes not only the testimony of the victim, but also, among other things: (i) cell-site and geo-location records which confirm that the defendant transported the victim interstate on multiple occasions; (ii) forensic cell phone and computer records which demonstrate an extensive history of text, phone and skype communications between the defendant and the victim, many of which the defendant took efforts to delete; and (iii) hotel and airline records, receipts and photographs from the defendant's November 2017 day trip to Chicago.

Third, the defendant's history and characteristics demonstrate that he is a danger to the community. Although the defendant does not have a criminal history before his May 2018 arrest, the brazenness and callousness of the defendant's conduct in the instant case, particularly when coupled with his abuse of his position of power in the Orthodox Jewish community and as an associate of the NYPD, reveals his total disregard for the law and the well-being of others.

Finally, the defendant poses a risk of flight. Although the defendant has been out on bail since his May 2018 arrest in Kings County, his incentive to flee has grown exponentially with his arrest in the instant case, as he now faces a mandatory minimum sentence of 10 years. When the incentive to flee is so strong, no combinations of sureties and other restrictions can assure his appearance. See, e.g., United States v. English, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant was charged under § 924(c), faced a presumption against release, and a mandatory minimum sentence that incentivized fleeing); United States v. Henderson, 57 F. App'x 470, 471 (2d Cir. 2003) (summary order) ("[T]he presumption regarding flight risk has changed because Becton now faces a ten-year mandatory minimum sentence.").

C. <u>Conclusion</u>

        For the foregoing reasons, the government respectfully requests that the Court issue a permanent order of detention against the defendant.

        Respectfully submitted,

        SETH D. DUCHARME
        Acting United States Attorney

By:    /s/ Erin Reid
        Erin Reid
        Jonathan Algor
        Assistant U.S. Attorneys
        (718) 254-7000

cc:    Defense Counsel (by email)