# Exhibit Q

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF KINGS:  CRIMINAL TERM:  PART TAP1
 2   - - - - - - - - - - - - - - - - - - - - - -X
                                          :
 3    THE PEOPLE OF THE STATE OF NEW YORK  :
                                          :
 4                                         :
         - against -                       :      INDICTMENT
 5                                         :      NUMBER:
      JACOB DASKAL,                         :      3569-2018
 6                                         :
                     Defendant.            :
 7                                         :      CALENDAR CALL
                                          :
 8   - - - - - - - - - - - - - - - - - - - - -X
 9                              Supreme Court
                               Via Skype videoconference
10                             August 12, 2020
     B E F O R E :
11
             HONORABLE DINEEN RIVIEZZO,
12                    Justice of the Supreme Court

13
     A P P E A R A N C E S :
14

15
             ERIC GONZALEZ, ESQ.
16           District Attorney, Kings County
             350 Jay Street
17           Brooklyn, New York 11201
             BY: KEVIN O'DONNELL, ESQ.
18           Assistant District Attorney

19

20           MEISTER SEELIG & FEIN LLP
             Attorneys for the Defendant
21           125 Park Avenue, 7th Floor
             New York, New York 10017
22           BY:  EVAN LIPTON, ESQ.

23

24
                            KIYOKO PANZELLA, RPR
25                          SENIOR COURT REPORTER
```

PROCEEDINGS                                            2

1              THE CLERK:  On the TAP1 trial calendar, No. 3,

2     Indictment 3569 of 2018, Jacob Daskal.  Defendant excused

3     for this appearance.

4              Appearances, please.

5              MR. O'DONNELL:  Kevin O'Donnell for the People.

6              Good afternoon, everyone.

7              MR. LIPTON:  Evan Lipton, 125 Park Avenue, for

8     Mr. Daskal, whose appearance has been excused.

9              THE COURT:  Yes, I did excuse his appearance.  I

10    meant this to just be kind of a status, you know, post --

11    or pre -- we're in the middle of pandemic, not

12    post-pandemic.  Post-pandemic makes it sound like the

13    pandemic is over, and unfortunately, as we all know since

14    we're all here on video, it's far from over.

15             But what I meant to say was, as I was saying off

16    the record, I only presided over this record one time,

17    which is February 13th after I took the TAP part over.  The

18    parties had indicated to me at that time that there were

19    still motions to controvert the search warrants that

20    Judge Miller had not decided, and so I took them and we put

21    the case over from March 30th for purposes of that -- for

22    that purpose.

23             I have those motions here.  I'm in the middle now

24    of working my way through them but thought it would be

25    helpful to have a discovery conference to see what might

1    have occurred from February to now, and I realize there's

2    some things that we need to put on the record.

3         Mr. O'Donnell, I'll let you make the record again

4    that you were just telling us off the record about the

5    Eastern District.  Go ahead.

6         MR. O'DONNELL:  Right.

7         Judge, as you said off the record, I had said this

8    first in court on February 11th of 2019, that the federal

9    government is -- intends to take the case.  The complaining

10   witness shortly before then had a forensic interview with

11   the federal government.  That was done.  I'm not sure

12   exactly who did the interview, but it was, I believe, a

13   recorded interview in late January of 2019.

14        Since then I've been waiting for them to take the

15   case, so to speak.  They have taken a large amount of the

16   electronic evidence that was recovered in the search

17   warrant and obtained search warrants for that material.

18        THE COURT:  I'm sorry, and what?  And what?

19        MR. O'DONNELL:  They've done their own search

20   warrants of the computers and the phones.

21        THE COURT:  Oh.

22        MR. O'DONNELL:  Well, I'm not sure about the

23   phones, but definitely computers.

24        They -- March of this year I had met with two of

25   the US attorneys who were working on the case in person to

PROCEEDINGS                                    4

1    just go over last-minute things, and my anticipation was

2    they were moving forward with charges at that time.  I had

3    a conversation yesterday, or it could have been the day

4    before.  I'm losing track of days, but I believe it was

5    yesterday with the assigned U.S. attorney who indicated to

6    me, you know, they're just waiting on what charges they're

7    going to be going forward with.

8         One of the things that I had mentioned was

9    Brooklyn doesn't have any sitting grand juries, and

10   Mr. Lipton, who I know does federal practice, correctly

11   said that in Islip there are grand juries sitting.  The

12   folks down the street from my office have gone out and

13   presented cases in Islip and they're now getting motions

14   that this was an improper procedure so until the courts

15   determine whether it is a legitimate thing to do the U.S.

16   Attorney's Office in downtown Brooklyn is working under the

17   assumption that they don't have a working grand jury at

18   this time.  I don't know when they're gonna impanel grand

19   juries.  My guess is in September, so that's -- that's

20   where we are in terms of the federal government.

21        I was told, the last conversation I had with them,

22   that they are still going to go forward with the case, and

23   I will agree it's taken them a very, very long time.

24        I did do a -- we did not do a certificate of

25   compliance in this case yet.  I did do an NDF.  I believe I

1    attached the police officer Giglio material to it.

2              I'm looking at Mr. Lipton's letter from March of

3    this year.  Other than contact information, which I have to

4    verify for certain people, and I'm pretty sure for the

5    complaining witness.  I don't know where she's currently

6    residing.  When I do find that other contact information

7    I'll either be providing email address or seeking a

8    protective order, and then the only other thing that's in

9    there is designate which law enforcement officers are going

10   to be called as witnesses so if I didn't do that in the NDF

11   then I do need to do that, but I don't believe there's any

12   other material that was listed in his letter that the

13   People are aware of or posses.

14             One of the things was, "Please provide all grand

15   jury transcripts."  The only two people who testified in

16   the grand jury were the complainant and the arresting

17   officer, and that's been provided to Counsel.

18             THE COURT:  Mr. Lipton, just so you know, sir,

19   that letter that you sent, I'm assuming that you cc'ed

20   Court, but it's not in the court file so if you want it as

21   part of the court file, sir, you'll have to email it to

22   myself or to my court attorney.

23             MR. LIPTON:  Okay.  Thank you.  I will do so.  I

24   did not copy the Court.

25             THE COURT:  Oh, all right.

                              - kyp -

1          MR. LIPTON:  At this point in time, you know, it's

2    unclear what the enforcement mechanisms are for Article 245

3    are so I was trying to work it out in the first instance.

4          THE COURT:  Sure, no, I appreciate that.  I just

5    -- again, I didn't know if you did or didn't, but I just

6    wanted to let you know that if you had that it's not in the

7    court file, but I appreciate that you tried to work it out.

8    From a judge's perspective that's what I wish that all

9    litigants would do, is work these things out without having

10   to involve me, but I just want to let you know that it

11   wasn't in the file if you had meant it to be in the file.

12         MR. LIPTON:  Thank you.

13         THE COURT:  Yeah.

14         MR. LIPTON:  So I respectfully disagree with

15   Mr. O'Donnell's statement that all of the discovery has

16   been provided and that nothing else in my -- in my letter

17   or that's required under the discovery statute would still

18   in the possession of District Attorney's Office, but I

19   recognize that the correct time to challenge that might be

20   at the time that a certificate of compliance is issued so I

21   would urge that if the -- if the People believe that they

22   have complied with discovery that they issue such a

23   certificate.

24         I'll just point out -- I know the Court doesn't

25   have this letter in front of the Court, but for

1    Mr. O'Donnell's benefit, I'm looking at my request for

2    Giglio material regarding the complaining witness; my

3    request for text messages sent by the complainant witness

4    to her schoolmates which are discussed in the search

5    warrant; names of contact information for anybody else that

6    has any information about this case, which is specifically

7    enumerated to 245.  I know that there's an organization

8    called the Amudean (phonetic) Organization that's been

9    involved in this and they have to have had some

10   correspondence with the People, and, I mean, are there any

11   other witnesses in this case?  Because at this point it

12   doesn't look like there are.

13            THE COURT:  Well --

14            MR. LIPTON:  Were there any medical records?  Were

15   there any psychiatric records?  This is a -- this is a

16   first degree rape case.  I haven't seen anything.

17            MR. O'DONNELL:  If I could just -- there's --

18            I don't have text messages from the complaining

19   witness.  I mean, I know the Court doesn't have the letter.

20   It's the second bullet point.  There are no medical

21   records.  There are no psychiatric records, and I'm

22   looking.  If there's other witnesses that I need to list

23   out, I will certainly list them out.  I just have to go

24   back and look at the NDF as to whether or not everyone is

25   listed in there or not.

                        - kyp -

PROCEEDINGS                                                                                8

```
 1              THE COURT:  So, I mean, look, I don't know.  I'm
 2    at a little bit of a loss here because -- I guess we all
 3    are because from what the steps that you're describing,
 4    Mr. O'Donnell, on the one hand it does seem as if they've
 5    done more in the last several months then they did in the
 6    year proceeding, right.  In the year proceeding they,
 7    meaning the Eastern District -- and so they have made some
 8    steps towards taking the case from you, but at the same
 9    time, you know, they haven't done it yet so, you know, I
10    think Mr. Lipton already indicated that he's not consenting
11    to time.
12              Is that right, Mr. Lipton?
13              MR. LIPTON:  Correct.
14              THE COURT:  Yeah, so, you know, until they take it
15    they haven't taken it, right, and it's still here and it's
16    still pending and we have to go forward, you know, up until
17    the time in which you tell us that you've dismissed it so,
18    you know, there's no exception to -- well, the feds may be
19    taking this is not an exception to us going forward, I
20    don't believe, so I think we have to go forward, right, and
21    wait.  If -- when and if they take it, they take it.  Now,
22    it could be as soon as next month, but it may not be.
23              Unfortunately we're in an unfortunate time so my
24    suggestion would be, Mr. O'Donnell, that you respond to
25    Mr. Lipton's letter in writing and both sides can, you
```

```
1    know, submit the letters to the Court, and after
2    Mr. O'Donnell responds in writing, Mr. Lipton, if you have
3    an objection or you take issue with his response then we
4    can resolve it, but like you said, without the letter in
5    front of me it's very hard -- I can't -- you know, each of
6    you listing a recitation of things, that's not how I can do
7    it, but not only that, the amendments now, the amendments
8    from April say that it has to be in motion.  Any -- it has
9    to be in writing, objections to discovery, so I would just
10   put it in writing.  You already did, Mr. Lipton.  If
11   there's anything you want to add, Mr. O'Donnell can respond
12   in writing, and we can discuss it at another time.
13            In the interim I'll finish up the decision on
14   these warrants, the motions to controvert, and we'll give
15   it another adjourn date for those purposes, and if it turns
16   out that in the interim that, you know, the feds take the
17   case, so be it, but until then I think we have to go
18   forward because the case is from 2018 and, you know, I
19   think that's just the right thing to do.
20            So what else has to be put on the record?
21   Anything else?
22            MR. LIPTON:  I don't believe so.
23            MR. O'DONNELL:  No.
24            THE COURT:  No?
25            MR. O'DONNELL:  Not from the People.
```

1          THE COURT:  Okay.

2          Mr. Lipton, anything else from you?

3          MR. LIPTON:  Not from the defense.

4          THE COURT:  All right.

5          So let's just pick a date in -- I have a couple

6    weeks' vacation so let's just -- if we could pick maybe the

7    end of September, the beginning of October, and I'll have a

8    decision, hopefully, and we can then address whatever

9    discovery is outstanding before that time.

10         THE CLERK:  The week of October 6th.

11         THE COURT:  October 6th, the week of October 6th.

12         MR. LIPTON:  Fine.  Name your time.

13         THE COURT:  Mr. O'Donnell, is that all right?

14         MR. O'DONNELL:  Any time's fine with me.  I'm just

15   looking at my calendar.  I know Succos begins on

16   October 2nd and ends on October 9th.  I don't know what

17   days are days of observance or not for Mr. Lipton's client.

18         MR. LIPTON:  Any day that's observable is a day of

19   observance so thank you for bringing that up.

20         Yom Kippur is the 28th.

21         MR. O'DONNELL:  Succos and the two other holidays

22   end the Sunday of Columbus day weekend so anything from the

23   2nd to the 11th of October.

24         MR. LIPTON:  Okay.

25         You will know, I would like to put this on as soon

- kyp -

PROCEEDINGS                                    11

1    as possible for --

2              THE COURT:  So when?  What about the end of

3    September, then, before those holidays?  Is there a date

4    before those holidays begin?

5              MR. LIPTON:  The week of the 21st?

6              THE COURT:  Yeah, that's fine.

7              You want September 22nd?

8              MR. LIPTON:  Sure.

9              Are we still presuming that these are remote

10   appearances?

11             THE COURT:  I wish I had a good answer for you for

12   that question.  I don't know.  I mean, what I do know is

13   that the next set of judges who are going to be doing in

14   person appearances are the TAP judges.  My courtroom and my

15   colleague's courtroom have already been fitted for the --

16   with the Plexiglass, but I haven't been given a date in

17   which that's going to start to occur so I think that, you

18   know, if you want to come in I can always arrange for you

19   to come in, in the ceremonial courtroom and we give you a

20   time, you know, that that happens, but I don't know, you

21   know, whether or not all my cases will be in person by then

22   or not.  I have no way of knowing that yet.

23             MR. LIPTON:  I would only take the position that a

24   personal appearance is required when something actually

25   really substantive is happening in a case.

                       - kyp -

1          THE COURT:  All right, so we could leave it this

2     way for September 22nd and perhaps --

3          MR. O'DONNELL:  Can I interject for a second?

4          THE COURT:  Yes.

5          MR. O'DONNELL:  We're on a rotating work schedule

6     for my office so I'm actually in the office the following

7     week so, like, the 29th, 31st, or October 1st.

8          THE COURT:  Okay.

9          You mean just in case you have to come in?

10          MR. O'DONNELL:  Right.  If it's an in-person

11     appearance the 22nd I probably -- I probably could get to

12     go in but I have to go through a whole process.

13          THE COURT:  All right, so let's just pick the next

14     week just in case.  What's the next week then that's not

15     the Jewish holidays?

16          MR. LIPTON:  Yom Kippur is on the 28th to the

17     29th.  I mean, can we do the 22nd and do it remote?  I'm

18     not going to object to remote.

19          THE COURT:  All right, so we'll just leave it that

20     way.  September 22nd, and we'll leave it remote.

21          MR. O'DONNELL:  Okay.  That's fine with me, but if

22     it's going to be in person I probably can do it.  It's just

23     I have to go through some hoops to get approval from my

24     office.

25          THE COURT:  Right.

1              All right.  We'll just leave it September 22nd to
2      be remote, and perhaps it's a good idea for your client to
3      be there too, then.
4              MR. LIPTON:  Okay.
5              THE COURT:  Okay.  So September 22nd.  We'll send
6      you a Skype link.  Let's just pick a time.  Hold on one
7      second.  You want to just say 10:00 then?
8              MR. LIPTON:  Sure.
9              THE COURT:  Okay, so we'll send you a Skype link
10     for September 22nd at 10:00, and you'll just have to
11     forward the Skype link to your client, Mr. Lipton.
12             MR. LIPTON:  Yep.
13             THE COURT:  Okay.
14             MR. LIPTON:  Okay.  Good seeing everyone.  Thank
15     you.
16             THE COURT:  Thank you very much.  Take care.
17             MR. O'DONNELL:  Thank you.
18                   *    *    *    *    *
19             The foregoing is hereby certified to be a true and
20     accurate transcript of the proceedings as transcribed from
21     the stenographic notes.
22
23
24                          _____
                            KIYOKO PANZELLA, RPR
25                          SENIOR COURT REPORTER

                              - kyp -