LHE:EMR/JEA
F.#2018R02232

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                   Docket No. 21-CR-110 (NGG)

JACOB DASKAL,

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN OPPOSITION
TO THE DEFENDANT'S PRETRIAL MOTIONS

BREON PEACE
United States Attorney
Eastern District of New York

Erin M. Reid
Jonathan E. Algor
Assistant U.S. Attorneys
      (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the defendant's omnibus pretrial motions (the "Motion" or "Def. Mot.") (ECF Dkt. No. ("DE") 50). Specifically, the defendant moves to: (i) suppress evidence recovered from two of the defendant's computers, two cellular telephones, and his home and (ii) for a bill of particulars.

As set forth in detail below, both of the defendant's motions should be denied. First, the evidence the defendant seeks to suppress was obtained pursuant to judicially-authorized search warrants, and the information, records and correspondence seized are <u>direct</u> evidence of the defendant's criminal acts. Moreover, the Motion fails to establish any infirmity in any of the search warrants, which were based upon probable cause and properly tailored to the breadth of the investigation and particularized as to the evidence sought, as found by multiple neutral judges. Even if there were some legal deficiency in the search warrants—which is wholly unsupported by the record—the evidence should still not be suppressed because the incriminating nature of the evidence seized was immediately apparent to the investigating agents, and the agents had a good faith basis to believe that the warrants were lawfully issued. Thus, the defendants' motions to suppress the of the defendant's computers, two cellular telephones, and his home should be denied. Second, the Court should deny the defendant's motion for a bill of particulars, which is not warranted here.

FACTUAL BACKGROUND

I.      The Indictment and Charges

On or about May 10, 2018, the Kings County District Attorney's Office ("KCDA") received an indictment from a grand jury in the Kings County Supreme Court charging the defendant with two counts of Rape in the Third Degree (Counts One and Ten), four counts of

Criminal Sexual Act in the Third Degree (Counts Two, Three, Eleven and Twelve), six counts of Sexual Misconduct (Counts Four through Six and Thirteen through Fifteen), six counts of Sexual Abuse in the Third Degree (Counts Seven through Nine and Counts Sixteen through Eighteen), and two counts of Endangering the Welfare of a Child (Counts Nineteen and Twenty[1]).  That same day, the defendant was arrested by the NYPD outside his residence at 1220 46th Street, Brooklyn, New York ("Daskal Brooklyn Residence").

On February 26, 2021, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with one count of using an interstate facility to coerce a minor to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2422(b), one count of transportation of a minor with intent to engage in criminal sexual activity, 18 U.S.C. § 2423(a), and one count of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 242(b).  (DE 1).  The defendant's abuse of a 15-year-old victim, as described below, is the basis of both the state and federal indictments.

II.    Relevant Background

The defendant, who was 59 years old at that time, is charged with sexually abusing the Victim—who was 15 years old at the time of the charged conduct— from approximately August 2017 through November 2017 in Brooklyn, New York, upstate New York and Chicago, Illinois.  In or about April 2017, the Victim, who is part of New York's Orthodox Jewish community, was having issues with her family.  The Victim thereafter left her home and stayed with a family friend and eventually her aunt and uncle in Brooklyn, New York.  After the Victim had left her family home, the Victim's family contacted the Boro Park Shomrim Society (the "Society"), a private, Orthodox Jewish crime-patrol group, to help with the family situation.  The

---

[1] The Kings County case has since been dismissed.

defendant, as the Society's founder and chief, coordinated efforts with the family to purportedly address their issues with the Victim.

In or about June 2017, the Victim's aunt and uncle asked the defendant for assistance in finding the Victim a place to live. The defendant offered to have the Victim live with his family at their summer home in South Fallsburg, New York. Daskal's family stayed at the summer home while he worked in Brooklyn during the week and spent the weekends at the summer home. The Victim moved in with the defendant and his family. On a Saturday in August 2017, the defendant asked the Victim to come to his bedroom. The defendant locked the door, removed the Victim's shirt and inserted his fingers into her vagina while also putting his penis in her hand. After this incident, the defendant returned to Brooklyn and began texting with the Victim, stating, among other things, that he was "going to make her into a lady" and was a "father figure" to the Victim.

Later that week, the defendant returned to the summer home and continued the sexual abuse. At night while the rest of the family was sleeping, the defendant entered the Victim's bedroom and again put his fingers into her vagina while also making the Victim touch his genitals. While the Victim was upstate, the abuse happened several other times. On two occasions, the defendant drove the Victim in a vehicle to a location near where the Victim went to camp, purportedly to take her to visit some of her camp friends. Both times, the defendant pulled the Vehicle over, went into the backseat with the Victim, touched her vagina and made her perform oral sex on him. During one of the incidents, the defendant had a dash camera in his car and he turned it off and said in substance, "no one should see what we do." The defendant also told the Victim that she could not tell anyone about the abuse because he could go to jail because of her age and that "it's just going to ruin your life if you tell people."

4

Soon thereafter, the defendant and the Victim returned to Brooklyn in the Vehicle where the defendant again sexually abused the Victim. The abuse included sexual intercourse, oral sex and penetration using sexual objects. The defendant threatened to handcuff the Victim if she did not comply. The defendant also began to send text messages regarding his sexual fantasies.

In or around October 2017, the Victim's parents, with the assistance of the defendant, enrolled the Victim in Bais Yaakov High School in Chicago, Illinois. During that time, the Victim lived in the basement apartment of a residence the defendant and the Victim's parents had arranged for her. During this time, the defendant and the Victim communicated via text message and over Skype video chat, and the defendant requested nude photographs, including those depicting her vagina, as well as for the Victim to pose nude and show her vagina during Skype video chats. The Victim stated that she provided a live video stream of herself nude during at least one of the Skype video chats while she was living in Chicago.

In or about early November 2017, the defendant traveled to Chicago and picked the Victim up at her driver's education class and took her to a hotel. At the hotel, the defendant engaged the Victim in sexual intercourse and oral sex. After having sex, the defendant took the Victim to dinner at "Shallots" bistro in Chicago. The defendant flew back to New York later that evening.

After disclosing her relationship with Daskal to a classmate of hers, the Victim was reported to the school's principal. In fear of the defendant, the Victim recanted to the school principal, and was then expelled from the school and sent back to Brooklyn.

After spending some time with her father in Brooklyn, the Victim was sent to a school in Israel in or about December 2017. The Victim and the defendant communicated though social media while she was in Israel, and the defendant asked her to write him a letter stating that

whatever sex they engaged in was "therapy" and that she loved him.  The defendant explained that, if he were ever caught by law enforcement, the letter would exonerate him because the Victim wanted and asked for sex.  Daskal also asked the Victim to write another letter denying the sexual incident in Chicago.  The defendant repeatedly told the Victim that he was in his 50s, had police protection and was a "big" guy in the Jewish community and would deny any allegations.

This brief responds to the defendant's motions filed as of June 2, 2022.

<u>ARGUMENT</u>

I.     The Motions to Suppress the Information from the Defendant's Phones and
       <u>Computer Obtained Pursuant to Judicially Authorized Warrants Should be Denied</u>

The defendant has advanced five arguments as to why the search warrants in this case related to the defendant's phones and computers should be suppressed.  The defendant massively misses the mark as to each of his arguments.  The federal search warrants in this case were lawfully issued and were based on substantial cause to believe that evidence of crimes related to the allegations against the defendant would be found on those devices.  In short, the defendant's motions to suppress should be denied because neither the law nor the fact support any of his arguments.

A.     <u>Applicable Law</u>

1.     <u>Probable Cause</u>

Search warrants may issue upon a showing of probable cause "first, that a crime was committed, and second, that . . . evidence of such crime is located" in the premises to be searched.  <u>United States v. Travisano</u>, 724 F.2d 341, 345 (2d Cir. 1983) (citing <u>United States v. Harris</u>, 403 U.S. 573, 584 (1971)).  The familiar "probable cause standard simply requires a 'practical, common-sense decision whether, given all the circumstances set forth in the affidavit before the magistrate, there is a fair probability that contraband or evidence of a crime will be

6

found in a particular case.'" United States v. Martin, 426 F.3d 83, 86 (2d Cir. 2005 (quoting

Illinois v. Gates, 462 U.S. 213, 238 (1983 (alterations omitted)).  The determination as to probable

cause requires a "common sense" evaluation of the "totality of the circumstances."  Gates, 462

U.S. at 230.  Probable cause requires only a "probability or substantial chance of criminal activity."

United States v. Bakhtiari, 913 F.2d 1053, 1062 (2d Cir. 1990); United States v. Salameh, 152

F.3d 88, 112-13 (2d Cir. 1998).  Probable cause exists if, given all of the circumstances set forth

in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in

a particular place."  United States v. Grubbs, 547 U.S. 90, 126 S. Ct. 1494, 1499 (2006) (quoting

Gates, 462 U.S. at 238-39).

       In considering a challenge to the probable cause determination, the court reviews

the search warrant affidavit "simply to ensure that the magistrate had a substantial basis for

concluding that probable cause existed."  United States v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993)

(citations and internal quotation marks omitted); accord, United States v. Singh, 390 F.3d 168, 181

(2d Cir. 2004).  This is not a de novo review.  Illinois v. Gates, 462 U.S. 213, 236 (1983).  A

judge's determination of probable cause is entitled to substantial deference and "doubts should be

resolved in favor of upholding the warrant."  Rosa, 11 F.3d at 326; United States v. Martin, 157

F.3d 46, 52 (2d Cir. 1998).  Resolving doubts in favor of the warrant encourages the use of the

warrants and also recognizes that "once a warrant has been obtained, intrusion upon interests

protected by the Fourth Amendment is less severe than otherwise may be the case."  Gates, 462

U.S. at 237 n.10.

       There is a presumption of validity with respect to the affidavit supporting a search

warrant.  Franks v. Delaware, 438 U.S. 154, 171 (1978).  Where there is a claim that a warrant

contains false or misleading information, a defendant may seek a hearing pursuant to Franks, to

establish that the affidavit in support of a warrant contained deliberate or reckless material misrepresentations.  In Franks, the Supreme Court held that a defendant is entitled to a hearing only upon a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause."  Franks, 438 U.S. at 155-56 (emphasis added).  Under Franks, "[t]o suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: '(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.'"  United States v. Canfield, 212 F.3d 713, 717-18 (2d Cir. 2000) (citation omitted).

### 2.  Particularity and Overbreadth

The particularity requirement of the Fourth Amendment "guards against general searches that leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized."  United States v. Riley, 906 F.2d 841, 844 (2d Cir. 1990).  The requirement seeks to ensure that the warrant enables "the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize."  United States v. George, 975 F.2d 72, 75 (2d Cir. 1992).  "[C]ourts may tolerate some ambiguity in the warrant so long as 'law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured [sic] that all those facts were included in the warrant.'"  United States v. Galpin, 720 F.3d 436, 446 (2d Cir. 2013) (quoting United States v. Young, 745 F.2d 733, 759 (2d Cir. 1984)).

To be sufficiently particular under the Fourth Amendment, a warrant must satisfy three requirements." United States v. Ulbricht, 858 F.3d 71, 99 (2d Cir. 2017), overruled on other grounds by Carpenter v. United States, 138 S. Ct. 2206 (2018).  It must (i) "'identify the specific offense for which the police have established probable cause,'" (ii) "'describe the place to be searched,'" and (iii) "'specify the items to be seized by their relation to designated crimes.'"  Id. (quoting Galpin, 720 F.3d at 445).  "The Fourth Amendment does not require a perfect description of the data to be searched and seized." Id. at 100. Indeed, "[s]earch warrants covering digital data may contain 'some ambiguity[.]'"  Id.  (quoting Galpin, 720 F.3d at 446).  In fact, "a search warrant does not necessarily lack particularity simply because it is broad."  Ulbricht, 858 F.3d at 100. When a search warrant limits the scope of the search to evidence of particular federal crimes, and gives an "illustrative list of seizable items," the search warrant is sufficiently particular. Riley, 906 F.2d at 844-45.

The crime or crimes under investigation generally should be apparent from the face of the warrant; a warrant cannot, for example, call for seizure of all "records," or all evidence "relating to the commission of a crime," without further particularization.  United States v. Bianco, 998 F.2d 1112, 1116 (2d Cir. 1993) (warrant permitting seizure of all "papers," "records," and other items, without any "more particular limiting language" or tethering "to particular crimes," was insufficiently particularized), overruled on other grounds by Groh v. Ramirez, 540 U.S. 551 (2004); United States v. George, 975 F.2d 72, 76 (2d Cir. 1992).  However, a warrant for seizure of "all evidence" of a given crime or crimes is sufficiently particular if it offers a list of illustrative items.  See Riley, 906 F.2d at 844-45 (warrant containing list of illustrative items to seize was sufficiently particular notwithstanding provision allowing, as well, seizure of "other items that constitute evidence of the offenses" identified).  The requirement is satisfied if the warrant,

including the attachments it incorporates, "enable[s] the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." George, 975 F.2d at 75 (citations omitted); see also Groh, 540 U.S. at 557-59.

A warrant may leave some matters to the discretion of the executing officer. "Once a category of seizable papers has been adequately described, with the description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category." Riley, 906 F.3d at 845.

The probable cause and particularity requirements intersect in the doctrine of overbreadth. As to each category of evidence identified for seizure in the warrant, there must exist probable cause to believe it is relevant to the investigation at issue. See Galpin, 720 F.3d at 448 (warrant was overbroad where it allowed seizure of items related to crimes as to which no probable cause showing had been offered or made); United States v. Lustyik, 57 F. Supp. 3d 213, 228 (S.D.N.Y. 2014) ("[T]he overbreadth inquiry asks whether the warrant authorized the search and seizure of items as to which there was no probable cause.") (quotation marks and citation omitted); United States v. Hernandez, No. 09-CR-625, 2010 WL 26544, at *7-8 (S.D.N.Y. 2010) (framing overbreadth inquiry as "whether the magistrate judge authorized search warrants that were constitutionally overbroad because they provided for the seizure of specific items for which there is no probable cause").

3.   Good Faith

The logic of the "good faith exception" is straightforward: "the nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." United States v. Leon,

468 U.S. 897, 922 (1984).  Indeed, "[t]he animating principle of the exclusionary rule is deterrence of police misconduct, but the extent to which the rule is so justified varies with the culpability of the law enforcement conduct."  United States v. Clark, 638 F.3d 89, 99 (2d Cir. 2011) (internal quotation marks omitted).  For that reason, evidence seized pursuant to a judicially authorized warrant should remain admissible, "even if the warrant lacks probable cause or is technically deficient," where the agents executing the warrant "relied upon it in objective good faith."  United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992) (internal quotation marks omitted).

Although the government bears the burden to "demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant," the Second Circuit has observed that "in Leon, the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within its protection."  Clark, 638 F.3d at 100 (internal quotation marks omitted).  Thus, there are only four circumstances in which the good faith exception does not apply, which are to be viewed "against [a] presumption of reasonableness."  Id. These include: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable."  Moore, 968 F.2d at 222 (citing Leon, 468 U.S. at 923).  As the Supreme Court has observed, however, "[r]easonable minds frequently may differ on the question whether a particular affidavit established probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination."  Leon, 468 U.S. at 914 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)).  "In the ordinary case, an officer cannot be expected to

question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient."  Id. at 921.

    4.    Collateral Estoppel

Collateral estoppel, or issue preclusion, reflects the "fundamental notion . . . that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies."  United States v. Alcan Aluminum Corp., 990 F.2d 711, 718-19 (2d Cir. 1993); United States v. U.S. Currency in Amount of $119,984.00, More or Less, 304 F.3d 165, 172 (2d Cir. 2002) ("[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (citation and internal quotation marks omitted)).  Issue preclusion "saves parties and the courts from the waste and burden of relitigating stale issues, and, by discouraging inconsistent results, forwards public policy favoring the establishment of certainty in legal relations."  United States v. Alcan Aluminum Corp., 990 F.2d at 719 (citation omitted).  "Generally, for collateral estoppel to apply, four prerequisites must be satisfied: (1) the issues in both proceedings must be identical; (2) the issue must have been actually litigated and actually decided in the prior proceeding; (3) there must have been a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the resolution of the issue must have been necessary to support a valid and final judgment on the merits."  U.S. Currency in Amount of $119,984.00, More or Less, 304 F.3d at 172.  To be sure, "criminal collateral estoppel . . . generally may not be invoked against one sovereign on the basis of a ruling in a prosecution brought by a different sovereign."  United States v. Peterson, 100 F.3d 7, 12 (2d Cir. 1996).  And "no court has applied collateral estoppel to bar relitigation of a suppression issue in a later proceeding by a different sovereign."  Id.

B.      Factual Background

1.      Daskal Phones

On or about May 10, 2018, the defendant was arrested by the NYPD outside his Brooklyn residence.  Found and seized from his person, among other things, were two cellular telephones (the "Daskal Phones").  On or about October 10, 2018, five months following his arrest, a Kings County Supreme Court Judge issued a search warrant for the Daskal Phones (the "New York State Phones Warrant").  As relevant here, the state prosecution team never provided the government with the results of its search pursuant to the New York State Phones Warrant until March 2021.  Instead, in late November 2018, the state prosecution team provided the FBI with certain materials, which included the Daskal Phones and the forensic images of those phones.  To date, the government has never reviewed the search returns from the New York State Phones Warrant.

On or about September 21, 2020, the Honorable Dineen Ann Riviezzo, Justice, New York Supreme Court, found that there was probable cause to search the Daskal Phones for communications between the defendant and the Victim, but suppressed the evidence seized from the New York State Phones Warrant because the warrant was overbroad.  In doing so, Justice Riviezzo noted that the New York State Phones Warrant "contained no language limiting the search of the phones by content" and "no limit by date."  Def. Mot. Ex. E at 5.

The government opened its own investigation of the defendant in late November 2018.  On or about January 31, 2019, an FBI Child Adolescent Forensics Interviewer interviewed the Victim regarding the alleged abuse by the defendant.  Less than three weeks later, the government sought a search warrant independent of the state warrant authorizing the examination of the Daskal Phones.  On or about February 19, 2019, the Honorable Peggy Kuo issued a search

13

warrant authorizing the examination of the Daskal Phones (the "Federal Phones Warrant").  To be sure, the affidavit in support of the Federal Phones Warrant explicitly stated that the FBI had not searched either of the Daskal Phones in advance of seeking authorization to search them.[2] Nevertheless, the Federal Phones Warrant was limited in authorizing the seizure of only certain items, to include, correspondence regarding the Victim, images and/or videos of the Victim, communications discussing sexual abuse of a minor and/or traveling with intent to engage in illicit sexual conduct with a minor, child pornography, materials and photographs depicting sexual conduct between adults and minors, and attribution evidence related to the Daskal Phones.  Finally, the Federal Phones Warrant limited the scope of the data to be seized to a time period of just over one year, April 1, 2017 to May 10, 2018.

A forensic examination of the Daskal Phones revealed extensive chat communications between the defendant and the Victim, some of which were deleted by the defendant but recovered through forensic tools.  These communications also include references to prior sexual conduct between the defendant and the Victim.  For instance, a recovered WhatsApp conversation from on or about February 1, 2018 showed the following :

> [Victim]:      Basically . . . I was really nervous last night cause the girls were discussing what they did with their boyfriends . . .
>
> [Victim]:      And one girl said that she once did a blow job and he came . . . and she wanted to lick it . . . and he started screaming that she shouldn't cause of u swallow it then if u take a blood test later on it shows that u have his DNA in u . . . all girls agreed . . . so I was really nervous.  Because I did swallow u once . . . so please tell me honest truth . . . if I ever take a blood test will they blood able to see that I swallowed u?

---

As noted in the Federal Phones Warrant, the affiant did consult with the Brooklyn District Attorney's Office regarding their review of forensic information from the Daskal Phones, and Special Agent Spivack was provided with information that the Daskal Phones contained communications with cellular telephone numbers associated with the Victim.

[Daskal]:     No lol

[Daskal]:     It goes out of ur system

[Daskal]:     Only if you go inside and right away

[Daskal]:     After awhile even inside it's away unless ur pregnant
[Victim]:     But then when I'll b pregnant . . . . will they then see?

[Daskal]:     Nooooo

[Daskal]:     It does not stay anything

[Victim]:     Goood

[??]:     Lol

[Daskal]:     Don't worry

[Daskal]:     U know what my last name is

[Daskal]:     Mr careful

[Daskal]:     If it's on ur cloth yes

[Daskal]:     But not in ur stomach

A review of the Daskal Phones also contained additional evidence that supports the Victim's account of her presence with Daskal on November 5, 2017. For instance, the Daskal Phones contain a photograph of the Victim in a restaurant which, based on a review of open-source photographs from Shallot's Bistro, appears to depict the Victim inside Shallot's Bistro. In addition, location data obtained from the Waze navigation app on one of the Daskal Phones provides further support for the Victim's account. The location data shows that following Daskal's arrival at Chicago's O'Hare International Airport, Daskal traveled to 5800 N. Kimball Chicago, Illinois, the Victim's school. The Waze data further shows that Daskal traveled to the Candlewood Suites Hotel, Shallots Bistro and later in the evening to the Victim's Chicago residence and eventually to the airport before his flight back to New York.

15

2.    Daskal Computers

On or about May 10, 2018, a Kings County Supreme Court Judge issued a search warrant for the defendant's residence in Brooklyn, which included, among other things, the authorization to seize any and all computers or electronic devices (the "New York State Residence Warrant").

On or about September 26, 2019, the Honorable Robert M. Levy issued a search warrant authorizing the examination of one laptop computer and one desktop computer that were among the 30 devices recovered from the defendant at the time of his state arrest (the "Federal Computer Warrant").  As relevant to the federal investigation, and as is outlined in the Federal Computer Warrant, the Victim identified two computers which she observed the defendant repeatedly use during the relevant time period.  As a result, the government sought the Federal Computer Warrant limited to the two computer devices which the Victim could identify.  In addition, the Federal Computer Warrant was likewise limited (and similar to the Federal Phones Warrant) in authorizing the seizure of only certain items, to include, correspondence regarding the Victim, images and/or videos of the Victim, communications discussing sexual abuse of a minor and/or traveling with intent to engage in illicit sexual conduct with a minor, child pornography, materials and photographs depicting sexual conduct between adults and minors, and attribution evidence related to the Daskal Computers.  Similarly, the Federal Computer Warrant also was limited to a time period of just over one year, April 1, 2017 to May 10, 2018.

C.    Discussion

1.    The Phones Were Lawfully Obtained by Federal Law Enforcement Agents and Lawfully Searched Pursuant to Federal Warrants

As an initial matter, the Daskal phones were lawfully obtained from the defendant by state authorities pursuant to a seizure incident to arrest, and then lawfully obtained and searched

16

by federal law enforcement pursuant to valid search warrants.  The government does not intend to introduce any data obtained pursuant to the New York State Phones Warrant at trial.  Indeed, the main thrust of the defendant's arguments in support of suppression of the phone data relate to alleged defects in the New York State Phones Warrant—but those alleged defects have no relevance here, because the government is not relying on the New York State Phones Warrant. The operative Federal Phones Warrant is valid, and the Court should disregard the various arguments that the defendant has advanced relating to the New York State Phones Warrant.

2.      Collateral Estoppel Should Not Apply Here

Should the Court reach the defendant's arguments relating to collateral estoppel those arguments should be rejected.  The defendant first argues that Justice Riviezzo's decision to suppress the New York State Phones Warrant should be enforced in this case.  In doing so, the defendant asserts that the government should be prevented from challenging that decision and the Court should "give collateral estoppel effect" to the New York State Court order.  Def. Mot. at 5. Neither the facts, nor the law support this argument.

As to the law, the defendant provides no case law supporting this bald (and incorrect) assertion.  Under the doctrine of collateral estoppel, "a non-party to an action can be bound by the determination of issues decided in that action if it 'controls or substantially participates in the control of the presentation on behalf of a party.'"  United States v. Davis, 906 F.2d 829, 833 (2d Cir. 1990).  This Circuit has long recognized the fact that the state and federal governments are not just different parties, but different sovereigns, which generally forecloses the use of collateral estoppel except in "the most unusual circumstances."  Peterson, 100 F.3d at 12. Thus, although the Second Circuit has recognized the application of collateral estoppel in some criminal cases, it has also noted that, "no court has applied collateral estoppel to bar relitigation of

17

a suppression issue in a later proceeding by a different sovereign," Id.  Indeed, the Second Circuit

has repeatedly refused to hold that an order suppressing evidence in a state court prosecution must

be given effect in a subsequent federal court prosecution.  Davis, 906 F.2d at 834-35; see also

United States v. Mejias, 552 F.2d 435, 444 (2d Cir. 1977); United States v. Magda, 547 F.2d 756

(2d Cir. 1976).

   As to the facts, the defendant relies on speculation and hyperbole.  The defendant

has offered no evidence, nor can he, to suggest that federal prosecutors were involved in his state

prosecution in any way, let alone that the state authorities acted as a "tool" of or "cover" for the

United States.  Indeed, federal prosecutors and agents were not present for, and played no role in

the state suppression hearing.  In fact, the federal prosecutors did not learn of the suppression

hearing or Justice Riviezzo's decision until December 2020, months after the hearing and decision.

Ultimately, the facts simply provide no support for the defendant's assertion that the federal and

state prosecutors had a "close or substantial relationship" and his heavy reliance on Davis should

be ignored.

   Thus, the United States cannot be said to have had its day in court and the

defendant's argument that the government should be precluded from relying on its search of the

Daskal Phones based on the state suppression decision should be denied.

   3. The New York State Phone Warrant Should Not Be Suppressed

   The defendant next argues that this Court should independently find that the New

York State Phones Warrant is unconstitutional because it is a "general warrant."  Def. Mot. at 8.

More specifically, the defendant contends that the New York State Phones Warrant is both

overbroad and lacks particularity.  Id.  As an initial matter, the Court should reject this argument

because the government is not relying on any data obtained pursuant to the New York State Phones Warrant.

Contrary to the defendant's assertion, moreover, the New York State Phones Warrant was supported by probable cause, neither vague nor overbroad, and the items recovered pursuant to the warrant were lawfully seized. First, the affidavit contained a detailed explanation of the state crimes that were committed, i.e., rape in the third degree, in violation of New York Penal Law Section 130.25(2), criminal sexual act in the third degree, in violation of New York Penal Law Section 130.40 (2), and endangering the welfare of a minor, in violation of New York Penal Law Section 260.10(1). Def. Ex. J at 1. It likewise provided details regarding the defendant and the Victim, the time period during which those crimes were committed, and the actions taken by the defendant which showed how he had committed those crimes. Id. at 1-2. Ultimately, there was more than enough information to believe that the defendant had committed the listed crimes in the New York State Phones Warrant.

The defendant argument that the New York State Phones Warrant is overbroad simply ignores the affidavit in support of the warrant. While the warrant seeks an expansive list of potential electronic evidence, it is equally cabined by only searching evidence "concerning the crimes mentioned above" and uniquely particularized to the crimes which the defendant was charged in the state case. Id. at 1. That is all that is required under the Fourth Amendment. Indeed, a search warrant that limits the scope of the search to evidence of particular crimes and gives an "illustrative list of seizable items," is sufficiently particular. Riley, 906 F.2d at 844-45. And while the defendant is correct that the New York State Phones Warrant did not explicitly define a time period within the warrant, the lack of a time period is not fatal. Indeed, the New York State Phones Warrant details the relationship between the defendant and the Victim beginning in April 2017

and that abuse continued through November 2017.  Id. at 1-2.  In the end, the New York State Phones Warrant should not be suppressed because the warrant is sufficiently particularized and not overbroad.

### 4.    The Delay Was Not Unreasonable Under *Smith*

The defendant also argues that the Brooklyn District Attorney's Office's five-month delay in seeking the New York State Phones Warrant was unreasonable pursuant to the Second Circuit's decision in United States v. Smith, 967 F.3d 198 (2d Cir. 2020).  See Def. Mot. at 11.

In considering suppressing evidence based on a delay in seeking a warrant, the Second Circuit has focused on several factors including: (1) the length and reason for the delay; (2) the importance of the property to the defendant; (3) whether the defendant had a reduced property interest in the item; and (4) the strength of the government's case in seizing the property (the "Smith Factors").  See Smith, 967 F.3d at 203.  In Smith, after the defendant was removed from his card after finding him passed out and apparently drunk, officers searched the car and saw a tablet on the passenger seat with an image which they believed to be child pornography.  United States v. Smith, 759 F. App'x 62, 63 (2d Cir. 2019).  Officers seized the tablet but waited 31 days before applying for a warrant to search it.  Id.  Ultimately, the Court, after applying the Smith Factors, found that a delay of 31 days was unreasonable but that the good-faith doctrine applied and that the evidence should therefore not be suppressed.  See Smith, 967 F.3d at 211-213.

Assuming the Smith factors apply, considering all of them shows that any delay by the state authorities in obtaining a warrant for the phone was reasonable.  While the first factor (the length of time) would likely weigh against a finding of reasonableness as to the New York State Phones Warrant, the remaining factors weigh in favor of such a finding.  The second factor

(the importance of the property to the owner) favors the government here, as there is no claim that the defendant requested that these devices be returned to him or that they are important to him other than his conclusory pronouncements that they contain private information.   As to the third factor (whether the defendant had a reduced property interest) likewise weighs against the defendant in that law enforcement's ability to lawfully seize the phones incident to arrest and the probable cause that existed at the time of the arrest further reduced the defendant's possessory interest.   The fourth factor (the justification for the delay) also favors the government, because, unlike in Smith, the government was continuing to investigate the defendant's crimes during the period between the seizure and the New York States Phones Warrant application.   See United States v. Green, 2021 WL 1877236, at *7 (W.D.N.Y. Feb. 3, 2021) (delay was justified where investigation as ongoing).

Notwithstanding this, and as detailed more fully below, even if the Brooklyn District Attorney's Office's delay in applying for the New York State Phone Warrant was unreasonable, suppression is not warranted under the good faith exception to the exclusionary rule. Here, for all the reasons set forth above, an objectively reasonable officer could have believed that Smith did not apply because the warrants were sought prior to the Smith decision.  Furthermore, because the federal warrants disclosed that the Daskal Phones and Daskal Computers had been retained since the defendant's arrest in May 2018, the federal agents here acted in good faith in relying on the Federal Phones Warrant and Federal Computer Warrant, even if the retention had, in fact, been unlawful.  See United States v. Ganias, 824 F.3d 199, 223 (2d Cir. 2016) (en banc) (finding that the good faith exception applied to a 2006 search warrant application which fully disclosed that the computer data had been retained since 2003).  The agent's reliance on the federal

warrants were thus objectively reasonable and in good faith.  Suppression is unwarranted, and the motion should be denied.

> 5.    The Federal Warrants Were Based Upon Probable Cause Irrespective of the New York State Warrants

The defendant next argues that the Federal Phones Warrant and Federal Computer Warrant are invalid because they relied upon information obtained from what the defendant contends was "tainted evidence" from the New York State warrants.  See Def. Mot. at 13.  That argument fails.

First, for all of the reasons discussed above, the New York State Phones Warrant was proper, so it cannot have tainted the federal warrants even if the defendant is correct that the warrants depended upon information obtained from the New York State Phones Warrant to establish probable cause.

Moreover, the federal warrants did not rely on information from the New York State Phones Warrant to establish probable cause, because probable cause is clearly established without the one spare reference to the consultation with the Brooklyn District Attorney's Office regarding information that the Daskal Phones contained communications with cellular telephone numbers associated with the Victim.  Thus, even if the New York States Warrant was assumed arguendo to be improper and its fruits tainted, "the mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant," but rather the "court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant."  United States v. Peeples, 962 F.3d 677, 688-89 (2d. Cir. 2020).  Such is the case here.

The Federal Phones Warrant and Federal Computer Warrant are substantially similar and only make a passing reference to the New York State Phones Warrant.  For instance,

the vast majority of the paragraphs of the affidavits in support of the warrant to search the defendant's devices detail the progression of the federal investigation and outline in detail the Victim's account of the defendant's abuse.  The affidavits also outline additional evidence obtained during the federal investigation which corroborates the Victim's accounting of the defendant's abuse, such as various records related to the defendant's one-day travel to Chicago on November 5, 2017.  These records include, among other things, hotel records where the defendant abused the Victim, records from the Shallot's Bistro and the roundtrip ticket that the defendant purchased for a flight from New York's La Guardia airport to Chicago's O'Hare airport on November 5, 2017 (Daskal arrived in Chicago at approximately 12:22 p.m. and returned on that same day, leaving Chicago at approximately 8:30 p.m.)  The defendant does not cite to any of the federal affidavits as evidencing references to information obtained from the New York States Phones Warrant and instead implies that the federal prosecutors and agents must have relied on the "forensic extractions" of the Daskal Phones as the basis for interviewing the Victim on January 31, 2019.  By his logic, any reference at all to the interview of the Victim in the search warrant application renders the warrant invalid.  That is not the law.

As an initial matter, and as has been repeatedly addressed throughout the government's brief, the federal prosecutors and agents did not review the Daskal Phones or the "forensic extractions" prior to seeking either of the federal warrants.  And excising the few paragraphs that makes any reference to the New York State Phones Warrant in each warrant and leaving the remaining discussion establishes far more than "a fair probability that . . . evidence of a crime will be found" pursuant to the requested warrants.  Gates, 462 U.S. at 238.  Still, even if it were a closer call, the Second Circuit has made clear to afford "considerable deference to the

probable cause determination of the issuing magistrate," Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007), the defendant's arguments that the warrants were tainted should be rejected.

      6.    The Federal Warrants are Particularized and a *Franks* Hearing Is Unnecessary

      The defendant also takes issue with the Federal Phones Warrant and Federal Computer Warrant and argues that the warrants are overbroad.  See Def. Mot. at 15.  The defendant also seeks a suppression hearing to address purported issues that the defendant believes needs to be addressed regarding the government's review pursuant to the Federal Phones Warrant and Federal Computer Warrant.

      First, as noted above, the defendant's argument that the federal warrants are overbroad is simply wrong.  Both warrants are based on probable cause and neither overbroad nor lacking in particularity, and the seized evidence was well within the scope of the warrant.  The federal warrants in this case authorized the search and seizure of specific categories of evidence of specific crimes from within those devices, for a time period of just over one year, April 1, 2017 to May 10, 2018.  The defendant is incapable of making any showing that the items that law enforcement was authorized to seize were not directly relevant to the offenses under investigation. The federal warrants described the crimes that the defendant was believed to have been committed in great detail, and why the affiant believed he had committed them.  This evidence established probable cause to believe that the defendant used at least one of his electronic devices in furtherance of his abuse, which included communications with the Victim.  Thus, the Federal Phones Warrant and Federal Computer Warrant were not overbroad by authorizing law enforcement to seize evidence of this very conduct, which included records, information and correspondence, including in the form of text messages with the Victim.

Second, the government's review of the Daskal Phones and Daskal Computers was done within the scope of the Federal Phones Warrant and Federal Computer Warrant authorization. The government completed its review of the Federal Phones Warrant and Federal Computer Warrant by January 2021, the duration of which is reasonable under the circumstances. See United States v. Metter, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012) (collecting cases). And the government's discovery to date has complied with its obligations. The government has previously produced to the defendant in multiple productions both the full contents of each of the devices, to include the Victim's devices, as well as items which law enforcement agents has identified as relevant to the Federal Phones Warrant and Federal Computer Warrant authorization. Nothing more is required. See United States v. Lumiere, 2016 WL 7188149, at *4 (S.D.N.Y. Nov. 29, 2016). In the end, the defendant has failed to articulate why an evidentiary hearing is required here. Indeed, an evidentiary hearing is not required "where a defendant's allegations are general and conclusory or are based upon suspicion or conjecture." United States v. Castellano, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985). The defendant has done just that here and has failed to suggest any improprieties with the federal warrants that would warrant a hearing pursuant to Franks. Thus, the defendant's request for a suppression hearing should be denied.

7.    The Agent Had a Good Faith Basis to Believe These Were Lawful Warrants

Finally, even if any of the foregoing warrants were invalid for one of the reasons cited by the defendant, the government had a good faith basis to believe that it was entitled to search the materials covered in the warrants. "'Evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion' and will not be suppressed." United States v. Eldred, 933 F.3d 110, 118 (2d Cir. 2019 (quoting Leon, 468 U.S. at 922 (1984 (alteration omitted)). Such is the case here. The information

25

disclosed to the magistrate judges undoubtedly described probable cause of serious sex crime offenses, the identity of the defendant, corroboration of the Victim through other evidence, and gave a clear basis for why the Daskal Phones and Daskal Computers had potential evidence relevant to the crimes for which the defendant is charged in this case. The defendant fails to even address why the exception does not apply because it cannot be squared with the text of the warrants being challenged.[3] Indeed, the defendant simply takes a different view of the probable cause than did the issuing magistrate. Cf. Ganias, 824 F.3d at 221-4; United States v. Thomas, 757 F.2d 1359, 1368 (2d Cir. 1985 ("There is nothing more the officer could have or should have done under these circumstances to be sure his search would be legal. The magistrate, whose duty it is to interpret the law, determined that the [warrant could be issued]; it was reasonable for the officer to rely on this determination."). In view of the agent having obtained multiple warrants without any evidence of providing misleading or false information, the defendant's argument against the good faith exception should be rejected.

It was manifestly reasonable for law enforcement to seek the warrants discussed above on the facts alleged in the affidavits, and once obtained, to rely upon them. There is no allegation, and no credible basis for any allegation, that law enforcement acted in bad faith in seeking or relying upon the warrants, or that law enforcement knew or should have known of some legal infirmity. For this reason, too, suppression of evidence should be denied.

II.    The New York State Residence Search Warrant Complied with the Fourth <u>Amendment and the Evidence Obtained as a Result was Lawfully Seized</u>

The defendant has also moved to suppress the evidence obtained from pursuant to the New York State Residence Warrant; specifically, his computers which were searched pursuant

---

[3] Notably, and as reference above, both of the warrants were obtained prior to the Second Circuit's decision in <u>Smith</u>.

to the Federal Computer Warrant.  The defendant's motion should be denied because the New York State Residence Warrant was based on probable cause and neither overbroad nor lacking in particularity, and the seized devices were well within the scope of the warrant.  Even if there were some defect in the warrant, moreover, the evidence was obtained in good faith reliance upon the warrant, and should therefore not be suppressed.

Additionally, despite the defendant's arguments to the contrary, the delay in seeking a federal warrant for the seized computers was reasonable in light of the government's efforts to independently investigate the defendant's crimes and determine which devices it had probable cause to search.  Even if the Court were to find that the delay was not reasonable, it should not suppress the evidence because the government reasonably relied on the federal warrant and did not act in bad faith.  Accordingly, the evidence recovered from the computers seized pursuant to the New York State Residence Warrant should not be suppressed.

      1.  <u>The New York State Residence Warrant Complied with the Fourth Amendment</u>

The defendant contends that the New York State Residence Warrant was overbroad and not particularized, and that the items seized were outside the scope of the warrant.  To the contrary, as the New York State Supreme Court held in its September 2020 order, the warrant was supported by probable cause, neither vague nor overbroad, and the items recovered pursuant to the warrant were lawfully seized.  See Def. Ex. I at 4-5.

First, the New York State Residence Warrant affidavit contained a detailed explanation of the state crimes that were committed, i.e., rape in the third degree, in violation of New York Penal Law Section 130.25(2), criminal sexual act in the third degree, in violation of New York Penal Law Section 130.40 (2), and endangering the welfare of a minor, in violation of New York Penal Law Section 260.10(1).  Def. Ex. H at 1.  It also explained the identity of the

individual believed to have committed those crimes, the time period during which those crimes were committed, and the method by which the defendant committed those crimes.  <u>Id</u>. at 1-2. Based on this information, there was probable cause to believe that the defendant had committed the listed crimes.

Second, the New York State Residence Warrant was sufficiently particular because it identified the specific offenses for which the police had established probable cause, described the residence to be searched and specified the items to be seized by their relation to the designated crimes – including sex toys, computers or electronic storage devices, cellular telephones, cameras, video recorders and other electronic devices.  <u>Id</u>. at 2.  These items were directly relevant to the offenses under investigation.  Indeed, the New York State Residence Warrant affidavit clearly established probable cause to believe that the defendant used electronic devices with internet-based applications and text messages to talk to the minor victim, that he scanned letters written by the victim—at his direction—into his computer, and that he made plans to travel and did travel for the purpose of sex with the victim.  <u>Id</u>. at 1-2.  The warrant was not overbroad by authorizing law enforcement to seize electronic devices, including computers, which could contain evidence of all of this conduct.  <u>See</u> <u>United States v. Pugh</u>, No. 1:15-CR-00116 (NGG), 2015 WL 9450598 at * 21 (E.D.N.Y. Dec. 21, 2015) ("a warrant is overbroad if it permits a search for evidence of crimes for which there is no probable cause"); <u>see</u> <u>also</u> <u>United States v. Ray</u>, 541 F. Supp. 3d 355, 391 (S.D.N.Y. May 26, 2021) (warrant authorizing seizure of all electronic devices and cellphones was sufficiently particular); <u>United States v. Levy</u>, No. 11-CR-00062, 2013 WL 664712 at *9–10 (S.D.N.Y. Feb. 25, 2013) (warrant authorizing seizure of evidence, fruits, and instrumentalities of violations of specified fraud charges, including computers, phones, and electronic data storage devices, was sufficiently particular).

Third, the items seized were within the scope of the New York State Residence Warrant's authorization.  Despite the defendant's arguments to the contrary, the mere fact that law enforcement officers seized a large number of electronic devices pursuant to the warrant did not invalidate the probable cause to seize them.  See United States v. Almaleh, No. 1:17-CR-25, 2022 WL 602069, at *20 (S.D.N.Y. Feb. 28, 2022) (denying a motion to suppress evidence recovered from the seizure of 35 devices from a residence, when the residence search warrant was neither overbroad nor insufficiently particularized).  Indeed, many of the electronic devices seized from the residence were specifically described in the warrant affidavit, which stated, "I am further informed by the witness that at the subject's residence, the subject has two laptop computers, multiple desktop computers, a scanner and a printer."  Def. Ex. H at 2.

Moreover, even assuming arguendo that the challenged seized items were not specifically within the scope of the warrant's authorization—which they were—they were properly seized under the plain view doctrine.  Given the New York State Residence Warrant, the law enforcement agents were legally authorized to search the residence and therefore "lawfully in a position from which they view[ed]" any additional electronic devices which could contain evidence of the offenses listed in the warrant.  Delva, 858 F.3d at 149.   Thus, the items seized were well within the scope of the New York State Residence Warrant.

Finally, even if there was some defect in the New York State Residence Warrant or the evidence seized was technically outside the scope of the warrant—which is belied by the record—the evidence obtained therefrom was obtained in good faith reliance upon the warrant, and should therefore not be suppressed.  The defendant has not set forth any factual basis to show that the executing agents' reliance on the New York State Residence Warrant did not meet the good faith exceptions set forth in Leon.  468 U.S. at 923.  Indeed, the defendant does not allege

that any of the information contained in the warrant was false, let alone that the affiant knew (or should have known) that information in the affidavit was false. Nor has the defendant come close to showing that the New York Supreme Court Judge who signed the warrant wholly abandoned his judicial role. Similarly, the defendant has not shown that the warrant affidavit was devoid of probable cause. Where, as here, there are "detailed factual allegations in support of probable cause . . . [s]uch cases almost invariably demonstrate reasonable reliance." Clark, 638 F.3d at 103. Likewise, the defendant has not identified any facial deficiency in the warrant, let alone one that is so egregious that no reasonable law enforcement officer could have relied upon the warrant.

III.   The Motion for a Bill of Particulars Should be Denied

The defendant has moved for a bill of particulars "regarding the dates of occurrence of each incident encompassed" in Count Two of the Indictment, which charges the defendant with transporting a minor in interstate commerce with the intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a). In the alternative, the defendant has moved to limit the government's evidence on Count Two to four dates in August 2017, which the government highlighted to aid the defendant in his review of the evidence. Def. Mot. at 41-42.[4] This request, effectively for a roadmap of the government's trial evidence, should be denied.

The Federal Rules of Criminal Procedure require only that an indictment set forth a "plain, concise and definite written statement of the essential facts constituting the offense." Fed. R. Crim. P. 7(c). Additional details, in the form of a bill of particulars, see Fed. R. Crim. P. 7(f),

---

[4] The defendant's request can be denied simply because it is not timely. Rule 7(f) of the Federal Rules of Criminal Procedure requires a defendant to move for a bill of particulars "within 14 days after arraignment, or at a later time if Court permits." Fed R. Crim. P. 7(f). The defendant was arraigned on March 4, 2021, and the instant motion was filed more than a year later, in June 2022.

are appropriate only when the indictment is too vague to inform the defendant of the nature of the charges to allow the preparation of a defense, avoid unfair surprise, and preclude double jeopardy. See United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004); United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (bill of particulars required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused") (internal quotations and citation omitted). A defendant must establish why he needs each of the particulars demanded and explain how the denial of each will prevent him from identifying the specific crimes with which he is charged. Therefore, the question is not whether the information would be helpful to the defendant, but rather whether the information is necessary.  United States v. Gotti, 784 F. Supp. 1017, 1019 (E.D.N.Y. 1992) (bill of particulars is necessary only if "directed to curing defects in an indictment; that is [only if it] clarifies the charges against the defendant") (emphasis in original).

A defendant is not entitled to a bill of particulars so long as he is "adequately informed of the charges against him and [is] not unfairly surprised at trial." United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (citations omitted), abrogated on other grounds by United States v. Marcus, 628 F.3d 36, 41 (2d Cir. 2010).  An indictment is adequate where, as here, "it contains the elements of the offense, sufficiently apprises the defendant of what he must be prepared to meet, and is detailed enough to assure against double jeopardy." United States v. Salazar, 485 F.2d 1272, 1277 (2d Cir. 1973) (citations omitted).  The instant indictment sets forth the elements of each of the charges against the defendant, including Count Two.  It is therefore sufficiently

specific to put him on notice of the charges against which he must defend and is detailed enough to assure against double jeopardy.[5]

Furthermore, in requesting "the details of the time, place and occurrence of each alleged incident encompassed in Count Two," the defendant misunderstands the purpose of a bill of particulars.  Def. Mot. at 33.  It is a matter of established precedent that the "purpose of a bill of particulars is not to disclose the "whens," "wheres" and "with whoms" of the allegations." United States v. Nekritin, 10-CR-491 (KAM), 2011 WL 1674799, *4-5 (E.D.N.Y. May 3, 2011). "Nor is the government required to 'disclose the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of its evidence or legal theories." Id.; see also United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987).  Courts have repeatedly held that "[a] bill of particulars may not be used by the defense as a fishing expedition or to force the government to reveal all its evidence before trial." United States v. Taylor, 17 F. Supp. 3d 162, 178 (E.D.N.Y. 2014); accord Torres, 901 F.2d at 234 ("Acquisition of evidentiary detail is not the function of the bill of particulars.") (citation omitted); United States v. Santoro, 647 F. Supp. 153, 188 (E.D.N.Y. 1986) (bill of particulars "is not to be used . . . to force the government to disclose its evidence . . . or its legal theory" (citations omitted)).

It is well-settled that specific requests for information such as exact dates and places of events "ignore the proper scope and function of a bill of particulars" and, as such, should be denied.  United States v. Volpe, 42 F. Supp. 2d 204, 225 (E.D.N.Y. 1999); see also United States

---

[5] Indeed, by his own admission, the defendant is not seeking a bill of particulars because he cannot understand the nature of the charges against him: his motion states that the charges against him "are not complicated ones," and, according to him, merely recycled from a previous New York state prosecution.  Def. Mot. at 2.  Such a statement obviates the need for a bill of particulars.

v. Kubitshuk, No. 16-CR-711 (KMW), 2017 WL 3531553, *5 (S.D.N.Y. Aug. 17, 2017) ("Defendants are entitled to a bill of particulars only if the information sought is <u>necessary</u>, not just <u>helpful</u>, to their case.") (emphasis in original). Similarly, a bill of particulars cannot be used "to foreclose the government from using proof it may develop as the trial approaches." <u>United States v. Perez</u>, 940 F. Supp. 540, 550 (S.D.N.Y. 1996) (internal quotations omitted). And finally, where (as here) the government has provided the defendant with significant amounts of pretrial discovery, a bill of particulars need not be granted. <u>See United States v. Panza</u>, 750 F.2d 1141, 1148 (2d Cir. 1984).

Courts have also consistently ruled against requests for bills of particulars in cases where defendants are charged with violations of Section 2423(a).  <u>See, e.g.</u>, <u>United States v. Vogelbacher</u>, No. 1:20-CR-00098, 2021 WL 1017126, at *6 (W.D.N.Y. Feb. 2, 2021); <u>United States v. Pierre-Louis</u>, 16 CR 541, 2018 WL 4043140, at *7 (S.D.N.Y. Aug. 9, 2018).  Instead, because "minors often are not capable of remembering the exact dates when the alleged acts occurred," <u>United States v. Young</u>, No. 08-CR-285, 2008 WL 4178190, at *4 (S.D.N.Y. Sept. 4, 2008) (quoting <u>Valentine v. Konteh</u>, 395 F.2d 626, 632 (6th Cir. 2005)), courts are especially willing to allow "approximate time frames or periods in the indictment" in those cases.  <u>See United States v. Turnquist</u>, No. 21-CR-15, 2022 WL 1913593, at *4 (W.D.N.Y. June 3, 2022).

In the instant case, the defendant's request that the government either furnish him a bill of particulars or otherwise be constrained to presenting evidence about the four dates in August it previously identified is unwarranted.  Such a request both demands an exhaustive list of "whens" and "wheres" *and* seeks to foreclose the government from developing its proof in advance of trial, even though the defendant concedes that he understands the charges the indictment and has already been provided with substantial discovery by the government.  The fact that the victim

33

was a minor at the time of the defendant's crimes further demonstrates that a bill of particulars is not required in this case.  In short, despite the defendant's claims to the contrary, this is a "textbook" case for the Court to deny the defendant's motion for a bill of particulars.  <u>See</u> Def. Mot. at 32.

CONCLUSION

For the foregoing reasons, the government respectfully submits that the defendant's motions should be denied.

Dated:    Brooklyn, New York
           June 21, 2022

                                   BREON PEACE
                                   United States Attorney
                                   Eastern District of New York
                                   271 Cadman Plaza East
                                   Brooklyn, New York 11201

By:          /s/
                        Erin M. Reid
                        Jonathan E. Algor
                        Assistant United States Attorneys
                        (718) 254-7000