UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

             -against-

JACOB DASKAL,

                     Defendant.

**MEMORANDUM & ORDER
21-CR-110 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are Defendant Jacob Daskal's omnibus pretrial motions seeking to exclude evidence obtained pursuant to various search warrants and to compel the Government to file a bill of particulars. (*See* Def's. Mot. for Bill of Particulars (Dkt. 47); Memorandum in Support ("Def's. Mot.") (Dkt. 50).) The Government opposes Daskal's motions in full. (*See generally* Gov't Opp. (Dkt. 55).) For the reasons discussed below, Daskal's motion are DENIED in all regards.

## I. BACKGROUND

This case stems from Defendant Jacob Daskal's alleged sexual abuse of a 15-year-old girl (the "Victim") from approximately August 2017 through November 2017. (Gov't Opp. at 3.)[1] Daskal is the founder and chief of the Boro Park Shomrim Society, a private, Orthodox Jewish crime-patrol group. (*Id.*) He was 59 years old at the time of the alleged abuse. (*Id.*) The Government alleges that the Victim's family contacted Daskal in June 2017 to ask for help finding her a place to live after she ran away from home. (Gov't Opp. at 3-4.) Daskal offered to have the Victim stay with his family at his summer home in South Fallsburg New York; the Victim moved in shortly thereafter. (*Id.*) There, on a Saturday in

---

[1] Unless otherwise noted, the following facts are taken from the Government's opposition brief.

August 2017, the Government alleges that Daskal began to sexually abuse the Victim. (*Id.*) The abuse continued on several other occasions over the summer, including two instances where Daskal drove the Victim to a location near where she went to camp to engage in sexual activity. (*Id.*) Daskal also told the Victim that "no one should see what we do" and that she should not tell anyone about the abuse because "it's just going to ruin your life." (*Id.*)  Daskal and the Victim later returned to Brooklyn, where he continued to engage in sexual activity with the Victim and sent her text messages describing his sexual fantasies. (*Id.* at 5.)

In October 2017, the Victim, with the assistance of Daskal, enrolled in Bais Yaakov High School in Chicago, Illinois. (*Id.*) The Government alleges that Daskal and the Victim shared sexually explicit text messages and Skype video chats while apart. (*Id.*) Daskal also traveled to meet the Victim in Chicago in November 2017, when they again engaged in sexual activity. (*Id.*) After disclosing her relationship with Daskal to a classmate and then recanting, the Victim was expelled from school in Chicago and sent back to Brooklyn. (*Id.*) The Victim's parents then sent her to live in Israel, where she continued to communicate with Daskal over social media. (*Id.*) Daskal then asked the Victim to write a letter stating that they engaged in sex as part of "therapy" and that she loved him, hoping that this letter would exonerate him if his abuse was discovered. (*Id.* at 5-6.) Daskal also repeatedly told the Victim about his connections to police, stature in the Jewish community, and that he would deny any allegations that she made against him. (*Id.* at 6.)

On May 10, 2018, a grand jury in the Kings County Supreme Court returned an indictment charging Daskal with two counts of Rape in the Third Degree, four counts of Criminal Sexual Act in the Third Degree, six counts of Sexual Misconduct, six Counts

of Sexual Abuse in the Third Degree, and two counts of Endangering the Welfare of a Child. (*Id.* at 2-3.) The same day, the NYPD arrested Daskal at his home at 1220 46th Street, Brooklyn, New York and recovered two cell phones from his person. (*Id.* at 2-3, 13.) The NYPD also executed a search warrant on Daskal's home, (the "New York Residence Warrant"), recovering approximately 30 computers in the process. (*Id.* at 16.) On October 10, 2018, the King's County District Attorney's Office ("Brooklyn DA") received a second warrant, this time authorizing search of the two cell phones confiscated from Daskal's person (the "New York Phones Warrant"). (*Id.* at 13.) On September 21, 2020, the Honorable Dineen Ann Riviezzo, Justice on the New York Supreme Court invalidated the New York Phones Warrant for unconstitutional overbreadth. (*Id.* at 13.)

Federal investigators opened an investigation into Daskal in November 2018 and obtained new warrants to search his phones and computers. (*Id.* at 13-14.) The first warrant, obtained on February 19, 2019, authorized federal search of Daskal's phones (the "Federal Phones Warrant"). The second, obtained on September 26, 2019, authorized federal search of two computers previously seized from Daskal's home (the "Federal Computers Warrant"). (*Id.* at 16.) The two warrants were supported by affidavits with nearly identical underlying factual support and relied heavily on an FBI interview with the Victim in January 2019. (*See generally* Ex. L to Daskal Def's. Mot. (Dkt. 50-8); Ex. N to Daskal Def's. Mot. (Dkt. 50-8).)

The Government brought the instant prosecution against Daskal on February 26, 2021, charging him with: (1) Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. §§ 2422(b) and 3551; (2) Transportation of a Minor with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. §§ 2423(a) and 3551; and (3) Travel with Intent to Engage in Illicit Sexual Activity, in violation of 18 U.S.C. §§ 2423(b) and 3551.

(Indictment (Dkt. 1).) Daskal now moves the court to suppress the fruits of the searches of his cell phones, computers, and home. (Def's. Mot. (Dkt. 50) at 1.) In the alternative, he asks for a suppression hearing regarding search of his devices and home. (*Id.*) Finally, he moves for a bill of particulars. (*Id.*) The Government opposes Daskal's motion in all respects. (*See generally* Gov't Opp.)

## II.  LEGAL STANDARD

The Fourth Amendment protects persons against "unreasonable searches and seizures" by requiring that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This requirement is motivated chiefly by the "'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 583 (1980)).[2] To protect against this, the Fourth Amendment provides that "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Id.* (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)). The warrant requirement is also intended to ensure that "those searches deemed necessary should be as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). Evidence that is seized pursuant to an unreasonable search or derived from such a search must be suppressed. *James v. Illinois*, 493 U.S. 307, 311-12 (1990).

"An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that

---

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

contested issues of fact going to the validity of the search are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992); *see also United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005). "General and conclusory factual allegations which are based upon mere suspicion or conjecture, however, will not suffice to necessitate a hearing." *Gentile v. County of Suffolk*, 926 F.2d 142, 148 (2d Cir. 1991). "If facts urged in support of a hearing would not entitle the moving party to relief as a matter of law, no evidentiary hearing is required." *United States v. Chandler*, 164 F. Supp. 3d 368, 376 (E.D.N.Y. 2016).

## III. MOTION TO SUPPRESS

The court will begin by discussing the constitutional requirements for a valid warrant. It will then assess the constitutional sufficiency of the four warrants at issue before addressing the need for a bill of particulars.

### A. Warrant Requirements

"[T]he Fourth Amendment provides that a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Galpin*, 720 F.3d at 445. "[P]robable cause to search is demonstrated where the totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007). "This required nexus between the items sought and the 'particular place' to be searched protects against the issuance of general warrants." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011). "When examining a warrant, [a] magistrate's determination of probable cause should be paid great deference by reviewing courts." *United States v. Nelson*, 828 F. App'x 804, 806 (2d Cir. 2020) (Summary Order). The court need only ensure that the magistrate judge had a "substantial basis" for concluding that

probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

"A failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary." *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992). To satisfy the Fourth Amendment's particularity requirement, a warrant must: (1) "identify the specific offense for which the police have established probable cause"; (2) "describe the place to be searched"; and (3) "specify the items to be seized by their relation to designated crimes." *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020). However, "broadly worded categories of items available for seizure" do not necessarily render a warrant deficient. *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990). "When, for example, the criminal activity pervades an entire business, seizure of all records of the business is appropriate, and broad language used in warrants will not offend the particularity requirements." *Purcell*, 967 F.3d at 179. Courts in this Circuit have also identified certain circumstance-specific considerations that may bear on whether a given warrant lacks particularity, including whether it encompasses too broad of a time frame or fails to include one at all. *See United States v. Nejad*, 436 F. Supp. 3d 707, 724 (S.D.N.Y. 2020); *United States v. Hernandez*, No. 09-CR-625 (HB), 2010 WL 26544, at *9 (S.D.N.Y. Jan. 6, 2010).

Ordinarily, specificity in the application for a warrant or in its supporting documents does not cure its facial deficiencies. *Purcell*, 967 F.3d at 179. But "[a] court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004). A warrant's language of

incorporation must be "deliberate and unequivocal[.]" *In re 650 Fifth Avenue and Related Props.*, 830 F.3d 66, 100 (2d Cir. 2016). "Thus, for a warrant to be sufficiently particular, the alleged crimes must appear in either (1) the warrant itself, or (2) in a supporting document if the warrant uses appropriate words of incorporation and if the supporting document accompanies the warrant." *Id.*

In the context of digital searches, the particularity requirement is of heightened importance because "the centrality of computers in the lives of average people have rendered the computer hard drive akin to a residence in terms of the scope and quantity of private information it may contain." *Galpin*, 720 F.3d at 446. Still, "searches of computers may sometimes need to be as broad as searches of residences pursuant to warrants." *United States v. Ulbricht*, 858 F.3d 71, 100 (2d Cir. 2017), *overruled on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018). And "[s]earch warrants covering digital data may contain some ambiguity so long as law enforcement agents have done the best that could reasonably be expected under the circumstances[.]" *United States v. Belloisi*, No. 20-CR-219 (DLI), 2023 WL 2709879, at *7 (E.D.N.Y. Mar. 30, 2023) (quoting *Ulbricht*, 858 F.3d at 100). The Fourth Amendment also "does not require a perfect description of the data to be searched and seized." *United States v. Walker*, No. 18-3506, 2023 WL 3451419, at *3 (2d Cir. May 15, 2023) (Summary Order).

Valid warrants also cannot be overbroad in their description of items to be searched. "Breadth and particularity are related but distinct concepts." *Purcell*, 967 F.3d 179 (citing *Ulbricht*, 858 F.3d at 102).[3] "An otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified

---

[3] In weighing whether a warrant is sufficiently particularized, courts cannot consider unincorporated affidavits. Because overbreadth pertains to

by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446. The Second Circuit has noted that when the warrant authorizes broadly worded categories of items for seizure, its language "is to be construed in light of an illustrative list of seizable items." *Riley*, 906 F.2d at 844. "A warrant's broad time frame does not render the warrant overbroad." *United States v. Brown*, No. 20-CR-293 (WFK), __ F. Supp. 3d __, 2022 WL 4238459, at *12 (E.D.N.Y. 2022).

The good faith exception serves to bar exclusion of evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). The government bears the burden of demonstrating the "objective reasonableness of the officers' good faith reliance." *George*, 975 F.2d at 77. "[T]he Court must first consider whether the officers in this case acted in an objectively reasonable manner." *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 472 (S.D.N.Y. 2013). If their actions were not "objectively reasonable" and the officers violated clearly established law, then the Court must determine whether the conduct was more than isolated negligence. *Id.*

"The extent to which the exclusionary rule is justified by [] deterrence principles varies with the culpability of the law enforcement conduct." *Herring v. United States*, 555 U.S. 135, 143 (2009). Nonetheless, the good faith rule does not apply where: (1) "the issuing magistrate has been knowingly misled"; (2) "the issuing magistrate wholly abandoned his or her judicial role"; (3) "the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable"; and (4) "the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992)

---

whether the search authorized in a warrant is sufficiently supported by probable cause, however, courts can consult supporting unincorporated affidavits in assessing a warrant's breadth.

(citing *Leon*, 468 U.S. at 923); *see also United States v. Shipp*, 392 F. Supp. 3d 300, 312 (E.D.N.Y. 2019).

### B.  New York Phones Warrant

Daskal seeks to suppress evidence obtained from the two cell phones confiscated from his person on his arrest (the "Daskal Phones"). (Def's. Mot. at 1.) Search of these Phones was, according to the Government, at all times authorized by at least one of two warrants: the New York Phones Warrant and the Federal Phones Warrant. The court begins by discussing the validity of the New York Phones Warrant.

#### 1.  Collateral Estoppel

Daskal argues that this court is bound by Justice Riviezzo's finding of unconstitutionality as to the New York Phones Warrant. (Def's. Mot. at 5-7.) The court disagrees.

"[I]t has long been the rule in this Circuit that collateral estoppel never bars the United States from using evidence previously suppressed in a state proceeding in which the United States was not a party." *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997); *see also United States v. Mejias*, 552 F.2d 435, 444 (2d Cir. 1977). "The dual sovereignty concept may yield, however, if one sovereign effectively controlled the other . . . 'if the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution.'" *United States v. Peterson*, 100 F.3d 7, 12 (2d Cir. 1996) (quoting *Bartkus v. Illinois*, 359 U.S. 121, 124 (1959)). Yet, "mere participation by federal agents in an investigation does not implicate the United States as a sovereign." *United States v. Davis*, 906 F.2d 829, 834 (2d Cir. 1990). "At a minimum, it must be shown that federal prosecutors actively aided the state prosecutors during the local suppression hearing. Only then can it be said that their interests in enforcing federal law were sufficiently represented." *Id.* at 835. The party seeking to invoke collateral estoppel bears the burden of showing

that the "United States played a role as a 'laboring oar' in the conduct of the state proceedings." *Id.*

Though federal prosecutors were in touch with state investigators about the status of the federal case against Daskal, (*see, e.g.,* Ex. Q to Def's. Mot. (Dkt. 50-10) at 3-4), there is no indication that they were involved in the state suppression proceeding, let alone acting as a "laboring oar." State prosecutors represented to Justice Riviezzo at an August 12, 2020 status conference that federal authorities were considering bringing charges against Daskal, that they had interviewed the Victim, and that they possessed much of the electronic evidence against Daskal. (Ex. Q to Def's. Mot. at 3.) But this by no means suggested coordination regarding the suppression hearing in New York State court. To the contrary, federal authorities did not appear at the August 12, 2020 status conference. Nor did Assistant District Attorney ("ADA") O'Donnell make any statements suggesting federal involvement in the suppression briefing. His knowledge of the federal case also appeared to be limited; he did not know that that a Federal Phones Warrant had been obtained, when a federal grand jury would be empaneled, or ultimately that federal prosecutors were certain to bring charges. (*Id.* at 3, 4, 8.) In this context, the court cannot find coordination in the state suppression proceeding that rises to the level of a "close or significant relationship" such that the Government is bound by Judge Riviezzo's ruling. *See Davis,* 906 F.3d at 834.

Moreover, Daskal is not entitled to an evidentiary hearing over the matter because he has not put forth sufficient evidence to create a contested issue of fact as to federal involvement in the state suppression hearing. *Pena,* 961 F.2d at 339. Showing that the two sovereigns communicated around this time is not enough. Generalized cooperation between state and federal law enforcement is routine and does not on its own give rise to an inference of active federal aid in a state suppression proceeding.

*See Davis*, 906 F.2d at 835. The Government is thus not collaterally estopped from contesting the validity of the New York Phones Warrant.

### 2. Facial Validity

The court will conduct its own analysis to determine whether the New York Phones Warrant was valid on its face. Starting with particularity, the New York Phones Warrant clearly met the first two requirements—identification of the specific offense for which the police have established probable cause and description of the place to be searched. *Purcell*, 967 F.3d at 178. The Warrant listed Rape in the Third Degree (P.L. § 130.25(2)), Criminal Sexual Act in the Third Degree (P.L. § 130.40(2)), and Endangering the Welfare of a Child (P.L. § 260.10(1)), as crimes for which there was probable cause to investigate. (Ex. K to Def's. Mot. (Dkt. 50-8) at 1.) It also specified the two cellphones to be searched, a "chrome/stainless steel colored Samsung Galaxy S8 with serial number SM-G95OU and a white colored Apple iPhone 7 (model A1779) with serial number EC-16007." (*Id.*) The third requirement, specifying the relationship between items to be seized and specific designated crimes for which there is probable cause to investigate, *Purcell*, 967 F.3d at 178, is more difficult. The Warrant authorized search of specific materials on Daskal's Phones. This list was expansive and covered large categories of digital information, including GPS data, phone numbers, voice communications, contact information, photo images, registry logic, contents of electronic mails, and data from social media communications. (Ex. K to Def's. Mot. at 1-2.) Of the items on this list, only "contents of electronic mail and social media communications, . . . any deleted files and all images, databases of personal identification information and contact lists," was cabined to "the crimes mentioned above." (*Id.* at 2.) No other item of digital data enumerated in this broad authorization was limited to the state crimes under investigation. It is unclear why this

qualification was left out from the entirety of the search authorization.

In *United States v. Rosa*, the Second Circuit found a similar warrant to be lacking in particularity where it "fail[ed] to link the items to be searched and seized to the suspected criminal activity . . . and thereby lacked meaningful parameters on an otherwise limitless search of [the defendant's] electronic media." 626 F. 3d 56, 62 (2d Cir. 2010). The warrant at issue in *Rosa* did not, however, "set forth the nature of the suspected criminal activity" at all. *Id.* at 58; *see also United States v. Wey*, 256 F. Supp. 3d 355, 384 (S.D.N.Y. 2017) (concluding that warrants were insufficiently particularized when they failed to set forth the crimes under investigation); *Zemlyansky*, 945 F. Supp. 2d at 454 ("Nothing on the face of the [warrant] informs the searching officer for which crimes the search is being undertaken.").

Though a potential best practice, district courts in this Circuit have found that particularity does not require that each category of digital information authorized for search refers to the crimes under investigation. *See, e.g., United States v. Saipov*, No. 17-CR-722 (VSB), 2019 WL 3024598, at *7 (S.D.N.Y. July 11, 2019) (finding a warrant to be sufficiently particular where "certain of the enumerated categories of [digital data] do not include a specific reference to the charged crimes"); *United States v. Alston*, No. 15-CR-435 (CM), 2016 WL 2609521, at *4 (S.D.N.Y. 2016) (finding a warrant to be particular where only three of the seven items listed for search on the defendant's cell phone referenced the target offense.) In *United States v. Nejad*, Judge Nathan concluded "that the fact that these brief warrants do not reference the suspected crimes within the paragraphs authorizing seizure does not render them insufficiently particular." 436 F. Supp. 3d at 727. Rather, where the first page of the warrant mentioned the crimes under investigation, "the failure of these search warrants to repeat the suspected crimes in the paragraphs

authorizing seizure does not render them lacking in particular-ity." *Id.*

Accordingly, the court finds that the New York Phones Warrant was sufficiently limited by crimes to satisfy the Fourth Amend-ment's particularity requirement. The Warrant referenced the crimes under investigation on its face and restricted search of one category of digital data to such crimes. While more explicit lan-guage limiting the search of Daskal's Phones to these crimes would have been preferable, the Warrant, taken as a whole, was sufficiently specific "to permit the rational exercise of judgment [by the executing officers] in selecting what items to seize." *United States v. Shi Yan Liu*, 239 F. 3d 138, 140 (2d Cir. 2000).

Daskal also argues that the New York Phones Warrant was un-particularized because it did not reference individuals, places, time frames, or any other contextual allegation on its face. (Def's. Mot. at 10.) The Government counters that the New York Phones Warrant did lay out the allegations, parties, and applicable dates, citing the affidavit supporting the New York Phones Warrant for this proposition. (Gov't Opp. at 19.) But the New York Phones Warrant did not properly incorporate its supporting affidavit. Alt-hough it referenced the affidavit, *see* Ex. K to Def's. Mot. at 1 (noting "[p]roof by affidavit . . . having been made this day be-fore me by Assistant District Attorney Kevin O'Donnell"), the Warrant did not use sufficiently deliberate and unequivocal lan-guage of incorporation. *In re 650 Fifth Ave.*, 830 F.3d at 101 (finding similar language to be a reference and not an incorpo-ration). Daskal is therefore correct that the New York Phones Warrant lacked an applicable time frame.

In *Nejad*, Judge Nathan found that "there is no consensus in this Circuit as to when temporal limitations are required—or when the lack thereof alone may invalidate an otherwise valid search warrant." 436 F. Supp. 3d at 732. She ultimately found that given the lack of clarity on the issue, the good faith exception would

13

cure any deficiency that may or may not have existed. *Id.* at 732-33. The court agrees with this approach and is similarly hesitant to find a warrant unparticularized for lack of time frame given the ambiguity on this issue in this Circuit. *See United States v. Kamaldoss*, No. 19-CR-543 (ARR), 2022 WL 1200776, at *18 (E.D.N.Y. Apr. 22, 2022) (noting that the Second Circuit has not spoken to when time frames are constitutional requirements and that courts have not converged on a clear rule); *Zemlyansky*, 945 F. Supp. 2d at 454 ("[T]here is no apparent consensus as to when [a time frame] is required."). It will thus not impose such a requirement here.[4] In sum, the New York Phones Warrant did place sufficient "limitation on the kind of evidence sought" and did not "leave[] it entirely to the discretion of the officials conducting the search to decide what items are to be seized." *Purcell*, 967 F.3d at 178 (quoting *United States v. Buck*, 813 F.2d 588, 592 (2d Cir. 1987)). It was thus sufficiently particularized.

Daskal also takes issue with the breadth of the New York Phones Warrant, arguing that it was overbroad for authorizing wholesale seizure of information on his private life regardless of the relation to the crimes at issue, and resembles to the warrant invalidated for overbreadth in *United States v. Winn*, 79 F. Supp. 3d 904 (S.D. Ill. 2015). (*See* Def's. Mot. at 8-9.) The first argument overlaps with the question of particularity. For the reasons just discussed regarding the materials that the New York Phones Warrant authorized for seizure, this argument fails. Daskal's analogy to *Winn* is also unavailing because the overbreadth issue there pertained to authorization of a digital search that bore no relation to the

---

[4] Justice Riviezzo found the lack of date limitation or language limiting search to communication with the Victim to be determinative in finding the New York Residence Warrant overbroad. (Ex. E. to Def's. Mot. (Dkt. 50-5) at 6.) Her conclusion was, however, based on state law, (*id.*), and federal law applies to federal criminal prosecutions even when dealing with state-issued warrants. *See United States v. Rommy*, 506 F.3d 108, 129 (2d Cir. 2007); *United States v. Rowell*, 903 F.2d 899, 901 (2d Cir. 1990).

charged crime of public indecency. 79 F. Supp. 3d at 920. The facts in this matter are very different. The New York Phones Warrant authorized search of electronic information on Daskal's Phones pursuant to an investigation into Rape and Child Endangerment. (*See generally* Ex. K to Def's. Mot.) There is a clear connection between these crimes, as described by the Victim, and the electronically stored information ("ESI") on Daskal's Phones, (*see* Ex. J to Def's. Mot. (Dkt. 50-8) ¶¶ 3-14), whereas in *Winn* no such connection existed. The affidavit in support of the New York Phones Warrant stated that Daskal and the Victim "engaged in numerous electronic communication via text messaging and internet-based applications," in which Daskal discussed his sexual fantasies. (Ex. J to Def's. Mot. ¶ 8.) This created clear probable cause to authorize a broad search of the ESI on Daskal's Phones.[5] For these reasons, Daskal's analogy to *Winn*—an out of circuit case which does not control—is unpersuasive and the New York Phones Warrant was not overbroad.

Even if the New York Phones Warrant was facially invalid, the good faith exception would operate to prevent exclusion. In regard to overbreadth, the good faith exception can cure deficiencies except where probable cause is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. "Such a concern most frequently arises when affidavits are bare bones, *i.e.*, totally devoid of factual circumstances to support conclusory allegations." *Clark*, 638 F.3d at 103. Even if the affidavit supporting the New York Phones Warrant did not contain sufficient detail to provide probable cause for the full breadth of the Warrant, it would undoubtedly contain sufficient probable cause to save the Warrant for good faith purposes. Here, a reasonable officer could have easily believed that the New York

---

[5] *See* footnote 2.

Phones Warrant complied with the constitutional particularity requirement. *Groh,* 540 U.S. at 563. The warrant also identified the specific offense for which the police had established probable cause, described the place to be searched, and specified the items to be seized by their relation to designated crimes. *Purcell,* 967 F.3d at 178. Though this Warrant lacked a time frame, the lack of clarity regarding need for a time frame within the Circuit would not put an objectively reasonable officer on notice that the warrant was plainly unparticularized. *See Kamaldoss,* 2022 WL 1200776, at *18.

In sum, the New York Residence warrant was not facially invalid.

### 3.    Unreasonable Delay in Obtaining Warrant

The five-month delay in procuring a warrant to search Daskal's Phones following their seizure on May 10, 2018 was, however, unconstitutionally lengthy. *See United States v. Smith,* 967 F.3d 198 (2d Cir. 2020). To search a phone obtained pursuant to a lawful arrest, law enforcement must first obtain a search warrant. *Riley v. California,* 573 U.S. 373, 401 (2014). In *Smith,* the Second Circuit laid out a four-factor test for whether the delay between a warrantless seizure and the procurement of a warrant is unreasonable. 967 F.3d at 206. "*Smith* essentially directed that unreasonably delayed search results caused by police department administrative foibles are unacceptable." *United States v. Tisdol,* 544 F. Supp. 3d 219, 227-28 (D. Conn. 2021). These include: "(1) the length of delay; (2) the importance of the seized property to the defendant; (3) whether the defendant had a reduced property interest in the seized item; and (4) the strength of the state's justification for the delay." *Smith,* 967 F.3d at 203.

Here Daskal asserts, and the Government concedes, that the length of time between the confiscation of Daskal's Phones on May 10, 2018 and the issuance of the New York Phones Warrant on October 10, 2018 weighs against a finding of reasonableness. (Def's. Mot. at 11-12; Gov't Opp. at 20.) The court agrees. The

Second Circuit in *Smith* found a one month-long delay to be unreasonable. 967 F.3d at 207. The delay at issue here is substantially lengthier.

As to the second factor, the search and seizure of "personal electronic devices like a modern cell phone" implicates "special concerns" given the breadth of materials kept on these devices. *Smith*, 967 F.3d at 207-08. This is especially true where, as here, the phones seized are "smart" cell phones. *Id.* (citing *Riley*, 573 U.S. at 393).[6] Though district courts have found this importance to be reduced for incarcerated defendants who would not be permitted to possess the cell phone regardless of whether it had been seized, *see In re Application for Search Warrant*, 527 F. Supp. 3d 179, 185 (D. Conn. 2020); *Corbett*, 2021 WL 4480626, at *5, Daskal was released on bail following his arrest by state authorities. Continued state possession of his Phones thus inhibited Daskal's ability to possess or use them. *See United States v. Adams*, No. 20-CR-12 (LJV) (MJR), 2021 WL 10265208, at *13 (W.D.N.Y. Aug. 16, 2021). On the other hand, there is little testimony about Daskal's "use" of the Phones or their "particular significance" to him. *Smith*, 967 F.3d at 208; *cf. Adams*, 2021 WL 10265208, at *12; *United States v. Wells*, No. 20-CR-633 (NRB), 2023 WL 2223474, at *4 (S.D.N.Y. Feb. 23, 2023). Daskal also never requested return of his Phones. *Smith*, 967 F.3d at 208. Though Daskal insists that he should not be penalized for failing to make such a request, (Oral Arg Tr. (Dkt. 91) at 9), district courts have accounted for this consideration when weighing the second *Smith* factor. *See, e.g., Wells*, 2023 WL 2223474, at *4; *Corbett*, 2021 WL 4480626, at *5; *United States v. Williams*, No. 17-CR-246, 2023 WL 3407685, at *36 (W.D. Pa. May 12, 2023). Thus, the court finds that the second factor weighs in Daskal's favor, but only slightly so.

---

[6] The NYPD seized a Samsung Galaxy S8 and Apple iPhone 7 from Daskal's person. (Ex. J to Def's. Mot. ¶ 2.) Both are smart phones.

The third factor weighs in favor of the Government. Daskal's Phones were first seized from his person when he was arrested on May 10, 2018, pursuant to an Indictment from a grand jury in Brooklyn. (Ex. J to Def's. Mot. ¶ 10; Gov't Opp. at 2.) The existence of probable cause at the time of arrest reduces a defendant's property interest in that property. *See Smith*, 967 F.3d at 208-09; *Corbett*, 2021 WL 4480626 at *6. This is more so the case where probable cause has been established through a warrant application. *See In re Application*, 527 F. Supp. 3d at 187, *Wells*, 2023 WL 2223474, at *5. Daskal's property interest in the phones was thus reduced.

Finally, the fourth factor weighs in favor of Daskal. The Government contends that its delay in obtaining a search warrant was justified because it was investigating Daskal's crimes during the five months between confiscating his Phones and the issuance of the New York Phones Warrant. (Gov't Opp. at 21.) But district courts in this Circuit have only, to this court's knowledge, found such a justification to be compelling when new evidence comes to light between the confiscation of property and issuance of a warrant. *See United States v. Green*, No. 18-CR-121 (RJA) (MJR), 2021 WL 1877236, at *7 (W.D.N.Y. Feb. 3, 2021); *Corbett*, 2021 WL 4480626 at *6. The Government has not pointed to any such evidence here. The affidavit in support of the New York Phones Warrant does not recount any events that took place during the five months at issue, noting only that the Phones were in continuous NYPD custody from May 10, 2018 to October 3, 2018. (Ex. J to Def's. Mot. ¶¶ 4-12.) The affidavit is supported by almost the exact same facts as the one used to support the New York Residence Warrant, which was also signed on May 10, 2018. (*See*

*generally* Ex. H to Mot. (Dkt. 50-8); Ex. J to Mot.)[7] The Government has thus put forth no persuasive reason for its delay.

Accordingly, because the first and fourth *Smith* factors weigh strongly in Daskal's favor, and the second does slightly, the court finds that the delay between seizure of Daskal's Phones and issuance of the New York Phones Warrant was unreasonable. Of particular importance is the lack of justification for delay. The "general touchstone of reasonableness" applies to all Fourth Amendment analysis. *United States v. Ramirez*, 523 U.S. 65, 66 (1998). This concept involves balancing competing privacy and law enforcement-related interests. *United States v. Howe*, 545 F. App'x 64, 66 (2d Cir. 2013) (Summary Order). Where the Government has "provided no explanation for its delay and [shown no] sense of urgency in obtaining a search warrant," *id.*, the legitimate law enforcement purpose of such delay becomes more difficult to perceive and a finding of unreasonableness becomes more likely.

But the good faith exception remedies this violation. "[T]he exclusionary rule applies only if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence." *Smith*, 967 F.3d at 211. It does not apply to constitutional violations that are the product of isolated simple negligence, because such exclusion would not result in appreciable deterrence of police misconduct. *Id.* Instead, the good faith exception bars exclusion where the government has acted in "objectively reasonable reliance on a subsequently invalidated search warrant." *Leon*, 468 U.S. at 922.

---

[7] Oddly, the affidavit supporting the New York Phones Warrant appears to originally have been dated May 10, 2018, but the term "May" has been crossed out by hand and replaced with "October." (Ex. J to Mot. at 4.)

The Government invokes the good faith exception on the basis that the New York Phones Warrant was issued before the Second Circuit decided *Smith*. (Gov't Opp. at 21.) Courts have long held, however, that unreasonable delay in obtaining a warrant to search seized property may give rise to a Fourth Amendment violation. *See, e.g., United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) ("Of course, even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant."); *Howe*, 545 F. App'x at 65 ("In determining the reasonableness of the government's delay in seeking a search warrant after a valid seizure, a court looks to various factors, including the length of time for which the individual was deprived of her or his property . . . ."); *United States v. Burgard*, 675 F.3d 1029, 1036 (7th Cir. 2012) ("A well-trained officer is presumed to be aware that a seizure must last no longer than reasonably necessary for the police, acting with diligence, to obtain a warrant."). The objectively reasonable officer has long been on notice to avoid prolonged delay in obtaining a warrant to search seized property. The court in *Smith* acknowledged as much, stating that "precedent ran both ways as of the date of the seizure" at issue. 967 F.3d at 212.

But where is the line past which a reasonably well-trained officer would know the search was illegal? *Smith* itself provided mixed guidance on this question, stating on one hand that "the constitutional reasonableness of delay depends on the assessment and balancing of multiple factors . . . [and] is not an area of Fourth Amendment law that has reduced itself to bright-line rules," but also that an "objectively reasonable officer in [the actual officer's] position should have realized that by waiting a month he was perilously near the constitutional line." 967 F.3d at 212-213. District courts in this Circuit have interpreted *Smith*, decided in July 2020, as creating notice that an unjustified month-long delay is inexcusable. *See, e.g., Wells*, 2023 WL 2223474, at *8 n.6; *Tisdol*, 544 F. Supp. 3d at 227; *Green*, 2021 WL 1877236, at *9; *United*

*States v. Adams*, No. 20-CR-12 (LJV) (MJR), 2021 WL 10265208, at *15 (W.D.N.Y. Aug. 16, 2021). For delays occurring before this decision, courts have declined to apply the exclusionary rule even where the delay substantially exceeded one month. *See Adams*, 2021 WL 10265208, at *15 (108 days); *Green*, 2021 WL 1877236, at *9 (three months); *see also Howe*, 545 F. App'x at 66 (declining, before *Smith*, to exclude evidence after a 13-month delay).

The court will do the same here. Although the NYPD's delay in procuring the New York Phones Warrant was longer than the delay in *Smith*, the court, like many of its peer courts, will not find that the executing officers acted deliberately, recklessly, or with gross negligence—*i.e.,* without good faith. *Smith*, 967 F.3d at 211. The inflection created by the *Smith* decision is key to this conclusion. Today, law enforcement is on clear notice that unjustified delays of one month or greater in obtaining a warrant to search property seized without a warrant will result in exclusion. At the time of the seizure in question, it was not. *See, e.g., Tisdol*, 544 F. Supp. 3d at 227; *United States v. Hay*, No. 19-CR-170 (RJA), 2023 WL 142119, at *11 (W.D.N.Y. Jan. 10, 2023).

In sum, the court declines to exclude evidence obtained from Daskal's Phones due to a constitutional deficiency in the New York Phones Warrant.

### C.  Federal Phones Warrant

Even if the court found that exclusion would be warranted under the New York Phones Warrant, the Federal Phones Warrant would on its own authorize a federal search of Daskal's Phones.

#### 1.  "Taint" From New York Phones Warrant

Daskal contends that the Federal Phones Warrant is invalid because federal law enforcement "apparently reviewed material gathered in response to the NY Phones Warrant" and that this

review "lead to unconstitutional taint of the Federal Phones War-
rant." (Def's. Mot. at 13-15.) He further refines this theory in his
Reply brief, contending that search of materials obtained pursu-
ant to the New York Phones Warrant caused federal investigators
to apply for the Federal Phones Warrant. (Def's. Reply (Dkt. 60)
at 7.)

Daskal's assertion that federal agents viewed evidence obtained
under the New York Phones Warrant is based on a "rational in-
ference from the timeline of federal law enforcement
involvement," (Def's. Mot. at 14), and federal investigators' fail-
ure to expressly disavow review of the "forensic extractions" from
Daskal's Phones in the affidavit supporting the Federal Phones
Warrant. (Def's. Reply at 7.) After reviewing the parties' briefing,
the court ordered the Government to file a supplemental affidavit
with information on whether federal agents reviewed infor-
mation obtained under the New York Phones Warrant before
applying for the Federal Phones Warrant. (2/3/2023 Text Or-
der). The Government then submitted an affidavit prepared by
FBI Special Agent Aaron Spivack in which he attested that nei-
ther he "nor any other federal agents reviewed the search
returns" from the New York Phones Warrant and that he "did not
review [Daskal's Phones] or the forensic images of those phones
prior to obtaining the Federal Phones Warrant." (*See* Ex. A to
5/12/2023 Letter ("Spivack Affidavit") (Dkt.79-1) ¶¶ 7-8.) Spe-
cial Agent Spivack further acknowledged that he spoke about the
Phones with the Brooklyn DA, who also provided him with phone
numbers and an email address associated with the Victim along
with a small number of text messages and emails recovered from
one of Daskal's Phones. (*Id.* ¶ 9.)

The Spivack Affidavit dispels any notion that federal investiga-
tors conducted a broad, open-ended search of Daskal's Phones
prior to receiving the Federal Phones Warrant. Notwithstanding
any "rational" or "very strong" inference created by the timeline

of federal involvement and omission of the term "forensic extracts" from the affidavit supporting the Federal Phones Warrant, (*see* Def's. Mot. at 14; Reply at 7), the sworn Spivack Affidavit is sufficiently specific and nonconjectural to establish the nonexistence of an extensive pre-warrant search. *See Pena*, 961 F.2d at 339. This Affidavit does, however, acknowledge the limited sharing of information and messages recovered from Daskal's Phones. (Spivack Aff. ¶ 9.) The Brooklyn DA told federal investigators about the existence of text messages and emails with the Victim on Daskal's Phones, and provided excerpts from a small number of such messages along with a screenshot identifying the phone number associated with one of the devices. (Spivack Aff. ¶ 9; Ex. B to 5/12/2023 Letter (Dkt. 79-2).) Daskal's response to the Spivack Affidavit focuses on this disclosure. (Def's. Supp. Reply (Dkt. 84) at 8-9.) He calls attention to the fact that the original affidavit in support of the Federal Phones Warrant did not mention exchange of such messages, and only referred to the Brooklyn DA's representations that the Victim's phone numbers were found on Daskal's Phones. (*Id.*) Daskal contends that evidence obtained under the Federal Phones Warrant should be excluded due to the Government's failure to disclose this exchange in the affidavit supporting this Warrant, per *Franks v. Delaware*, 438 U.S. 154 (1978), and for unconstitutional taint. (Def's. Supp. Reply at 10-11.)

Both arguments miss the mark. Under *Franks*, a district court can exclude evidence seized under a warrant that is based on "misrepresentations" and/or "materially misleading omissions." *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987). "To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing

judge's probable cause or necessity finding." *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013). To determine whether misstatements are "material" a court must set aside the falsehoods in an application or correct omissions, and then determine if there remains a "residue of independent and lawful information sufficient to support a finding of probable cause or necessity." *Id.* "*Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." (*Id.* at 154.) Moreover, "[t]he Fourth Amendment entitles a defendant to a hearing if he or she makes a substantial preliminary showing that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008).

Daskal's *Franks* argument fails for a number of reasons. First, Daskal alleges that the Government's purported omission about the exchange of messages in the affidavit supporting the Federal Phones Warrant is crucial for a "particularity showing permitting search of the two cellular telephones." (Defs. Supp. Reply at 11). But *Franks* pertains to the requisite showing of probable cause, not particularity. *Rajaratnam*, 719 F.3d at 146. Daskal has provided no support for the contention that "materiality" in the *Franks* context means material to a finding of particularity. *Cf. Conklin v. Morris*, No. 18-CV-3805 (PKC) (CLP), 2022 WL 4640238, at *8 (E.D.N.Y. Sept. 30, 2022) ("The search warrant relied on by Defendant Morris in searching the Premises was valid both under *Franks and* the particularity requirement.") (emphasis added). Even if *Franks* did encompass a finding of particularity, Daskal has not made a preliminary showing that the undisclosed exchange of messages were "necessary" to the particularity finding here. He argues that exchanged communications were crucial for identifying the "specific phone"

for search. (Def's. Supp. Reply. at 10-11.) But it has not been established that particularity requires specification of a precise electronic device for search. *See United States v. Beal,* 730 F. App'x 30, 32-33 (2d Cir. 2018) (Summary Order).

Assuming that Daskal's argument pertains to the affidavit's probable cause for search of Daskal's Phones, the omission at issue is by no means material. The substantive communications that the Brooklyn DA shared with the Government were not the only factual support establishing the likelihood of finding communications with the Victim on the specific Daskal Phones. The Victim informed law enforcement that she communicated with Daskal using two cell phone numbers. (Ex. L to Def's. Mot. ¶ 13.) Two cell phones were recovered from Daskal's person on his arrest. (*Id.* ¶ 1.) The Brooklyn DA's disclosure that the Daskal Phones had the same numbers the Victim used to communicate with Daskal confirmed a finding of probable cause based on a "totality of circumstances." *Walczyk,* 496 F.3d at 156. Even if the affidavit disclosed the Government's receipt of substantive communications from the Brooklyn DA, the remaining evidence would still provide a "residue of independent and lawful information sufficient to support a finding of probable cause." *Rajaratnam,* 719 F.3d at 146. Daskal has thus failed to make out a "substantial preliminary showing" required for a Franks hearing, let alone entitlement to success on such a claim.

Turning to Daskal's taint argument, the "fruit of the poisonous tree" rule requires courts to apply the exclusionary rule not only to illegally obtained evidence itself—*i.e.,* tainted evidence—but also to other incriminating evidence derived from the primary evidence. *Nix v. Williams,* 467 U.S. 431, 441 (1984). It is calculated to "deter future unlawful police conduct and protect liberty by creating an incentive . . . for state actors to respect the constitutional rights of suspects." *Townes v. City of New York,* 176 F.3d

138, 145 (2d Cir. 1999). Though evidence seized during an illegal search should not be included in a warrant affidavit, the mere inclusion of tainted evidence in an affidavit does not on its own necessarily taint the warrant or evidence seized under it. *United States v. Trzaska*, 111 F.3d 1019, 1026 (2d Cir. 1997). "In those circumstances, 'a reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant[.]'" *United States v. Peeples*, 962 F.3d 677, 688-89 (2d Cir. 2020) (quoting *Trzaska*, F.3d at 1026).[8]

Here, the Government established probable cause for the Federal Phones Warrant without relying on the information obtained under the New York Phones Warrant. The affidavit in support of the Federal Phones Warrant contained a detailed description of the allegations against Daskal, (*see* Ex. L to Def's. Mot. ¶¶ 1-15), based on the Victim's account of Daskal's abuse, flight records, and receipts. (Gov't. Opp. at 22-23.) It established that the Victim communicated with Daskal via two cell phone numbers, and that two cell phones were recovered from Daskal's person upon his arrest. (Ex. L to Def's. Mot. ¶¶ 1, 13.) The information that the Government obtained from state investigators—the existence of text messages with the Victim on Daskal's Phones, brief excerpts of such messages, and screenshots identifying the number of one phone, (Spivack Aff. ¶¶ 8-9),—was substantially narrower than the affidavit in support of the Federal Phones Warrant's detailed description.

---

[8] Daskal's analogy to *Nejad* is also unavailing, because that case involved vast "mining" of a state search-warrant returns for federal crimes without authorization of a warrant, 487 F. Supp. 3d. at 210, whereas this case involves state investigators sharing small fragments of information with federal investigators.

Daskal, referring to the independent source doctrine, argues that the Federal Phones Warrant should be excluded because the Government's decision to seek this Warrant was triggered by its review of tainted evidence. (Def's. Reply at 6-8 (quoting *United States v. Johnson*, 994 F.2d 980, 987 (2d Cir. 1993))); *see also United States v. Nayyar*, 221 F. Supp. 3d 454, 465 (S.D.N.Y. 2016). Courts have addressed this issue by looking to the "context to determine what motivated law enforcement officers, particularly to determine what else they had learned in their investigation." *Nayyar*, 221 F. Supp. 3d at 467. There is no indication, however, that the decision to seek the Federal Phones Warrant was prompted by receipt of the allegedly tainted information. The Government opened its investigation into Daskal in late November 2018. (Gov't. Opp. at 13.) At this point, Daskal, an influential member of his community, had already been arrested by state enforcers. On January 31, 2019, the Victim gave her account of Daskal's alleged abuse to an FBI interviewer. (*Id.*) Special Agent Spivack's email with state investigators containing limited information from the New York Phones Warrant was dated February 14, 2019. (*See* Ex. B to Spivack Affidavit.) Given the public nature of the allegations against Daskal, the fact that his Phones were confiscated from his person upon his arrest by the NYPD, and the timeline of the federal investigation, there is a strong basis to believe that federal investigators were not motivated to seek their own warrant by information gleaned from the New York Phones Warrant. Daskal's assertion that the Government procured the Federal Phones Warrant after reviewing the "forensic images" on Daskal's Phones does not change this conclusion. (Reply at 5-6.) In his sworn affidavit, Agent Spivack attests that there was no federal review whatsoever of the forensic images before procurement of the Federal Phones Warrant,

let alone an open-ended search of Daskal's Phones. (Spivack Aff. ¶¶ 7-8.)[9]

In sum, even if this court found that information obtained pursuant to the New York Phones Warrant required exclusion, which it does not, federal investigators' limited use of such information would not necessitate exclusion of evidence gleaned pursuant to the Federal Phones Warrant. The court reaches this conclusion without needing to conduct an evidentiary hearing, as there are no contested issues of fact going to the matter of taint.[10]

### 2.   Unreasonable Delay in Obtaining Warrant

Daskal argues that federal agents unreasonably delayed in procuring the Federal Phones Warrant, which was issued three months after the New York Phones Warrants. (Def's. Reply at 4.) The Government counters that any unreasonable delay in procuring the Federal Phones Warrant is insulated by the good faith exception, as federal investigators disclosed to Magistrate Judge Kuo that Daskal's Phones were confiscated upon his arrest in May 2018. (Gov't Opp. at 21.)

Both parties misunderstand *Smith*. The delay at issue in *Smith* was between a warrantless seizure of property and procurement of a warrant to search the seized property. *See Smith*, 967 F.3d at 205; *Corbett*, 2021 WL 4480626, at *4. *Smith* itself focuses on delay after temporary seizure. 967 F.3d at 205 ("The right of the police to temporarily seize a person's property pending the issuance of a search warrant presupposes that the police will act with

---

[9] To the extent that Daskal argues that the mere transfer of his Phones from state to federal custody tainted any subsequent search of those phones, this argument would also fail for the reasons discussed *infra* Section III.D.2.

[10] The court sees no need to conduct an evidentiary hearing to "test SA Spivack's memory" about reviewing forensic images or extractions. (Def's. Supp. Reply at 3 n.4.) The court is satisfied with agent Spivack's sworn statements in his affidavit.

diligence to apply for the warrant."); *see also United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) (discussing the unconstitutionality of seizure based on probable cause where police unreasonably delay in obtaining a warrant). Indeed, it notes that "expediency in obtaining a search warrant to search seized evidence" is needed to avoid "interfering with a continuing possessory interest for longer than reasonably necessary." *Smith*, 967 F.3d at 205.

The delay here is between the issuance of the New York Phones Warrant, which authorized seizure of Daskal's Phones, and procurement of another warrant by a separate sovereign to search the Phones. Though the New York Phones Warrant was subsequently invalidated, it was operative at the time the Federal Phones Warrant was issued and authorized search and seizure of Daskal's Phones. The concern of unreasonably lengthy temporary seizure of property, at issue in *Smith*, was thus not present. Another district court in this Circuit has noted this distinction—between delay in procuring a warrant to search property obtained through a warrantless temporary seizure and delay in obtaining a second warrant to search the same property—and considered it in weighing the third factor in the *Smith* analysis. *See In re Application*, 527 F. Supp. 3d at 185-86. This court agrees that such a distinction is important, but believes that it goes to the applicability of *Smith* in the first instance rather than consideration of the factors articulated in the case.[11]

---

[11] Even if *Smith* were applicable, the good faith exception would still prevent exclusion of Daskal's Phones on this basis because the Federal Phones Warrant (2019) was issued before the Second Circuit's decision in *Smith* (2020) and district courts have refused to exclude evidence in such situations where the delay was of a similar length to the one at issue here (three months). *See supra* Section III.B.3. This conclusion would not depend on the specific facts of this case, and an evidentiary hearing would not be needed to resolve the applicability of the good faith exception.

This is not to say that federal agents can indefinitely hold property seized under another warrant without obtaining their own warrant. The need to review evidence obtained under a warrant in a reasonably timely manner precludes this practice. *United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012) ("[T]he Fourth Amendment requires the government to complete its review, *i.e.*, execute the warrant, within a 'reasonable' period of time.") Yet, seeing that only three months elapsed between the execution of the New York Phones Warrant and procurement of the Federal Phones Warrant, this limitation is not implicated here. *Id.* ("Numerous cases hold that a delay of several months between the seizure of electronic evidence and the *completion* of the government's review of that evidence as to whether it falls within the scope of the warrant is reasonable."). Thus, the time taken to procure the Federal Phones Warrant does not pose a *Smith* problem.

### 3. Facial Validity

Daskal also argues that the Federal Phones Warrant was overbroad and authorized seizure of evidence for which no probable cause exists. (Def's. Mot. at 19.) He takes issue with authorization of search of "20 different items that focused on the production, possession, transmission, purchase and sale and other transactions related to child pornography." (*Id.* at 20.) The affidavit in support of the Federal Phones Warrant stated that the Victim sent Daskal nude images and engaged in nude live streams with him. (Ex. L to Def's. Mot. ¶ 7.) The Victim was plainly a minor at the time of the alleged abuse. (*Id.* ¶ 4.) The affidavit thus clearly stated that Daskal was the recipient of naked depictions of a minor, providing sufficient probable cause to search Daskal's Phones for materials related to child pornography. That some of the items authorized for search in the Federal Phones Warrant referenced "the Victim" while others referenced "minors" does not change this outcome. (*See generally* Def's. Mot.

at 20-21.) Nor does the fact that the term "child pornography" was only used once in the affidavit. (*See id.* at 21.) Considering the "totality of circumstances," a fair probability existed that evidence of child pornography-related crimes would be found on Daskal's Phones. Concerns of overbreadth were further reduced by the Federal Phones Warrant's temporal limitation of April 1, 2017 to May 10, 2018. (Ex. L to Def's. Mot. at 23.) The court is also mindful of the deference afforded to a magistrate judge's finding of probable cause. *Nelson,* 828 F. App'x at 806.

Furthermore, the Federal Phones Warrant was not unparticularized, for much the same reasons that it was not overbroad. Attachment B to the supporting affidavit listed the crimes under investigation, described the specific categories of data to be searched, and tied these categories to specific crimes under investigation. (Ex. L to Def's. Mot. at 23-26; Ex. M to Def's. Mot. (Dkt. 50-8) at 1.) It also specified the time period in which the offenses under investigation were alleged to have occurred. (Ex. L to Def's. Mot. at 23.) The particularity requirement was clearly met. *See Purcell,* 967 F.3d at 178; *Kamaldoss,* 2022 WL 1200776, at *18. The Federal Phones Warrant was thus valid on its face.[12]

> ### 4.  Reasonableness in Execution

Daskal also contends that the Government did not properly execute the Federal Phones Warrant because it never produced a

---

[12] Even if it were not, the good faith exception would apply, and evidence obtained under this warrant would not be excluded due to facial invalidity. The Federal Phones Warrant was certainly not so unparticularized that a reasonable officer would know that it was constitutionally invalid. *Groh,* 540 U.S. at 563. Similarly, even if its affidavit in support did not contain sufficient detail to provide probable cause for the full breadth of the Federal Phones Warrant, the affidavit undoubtedly contained sufficient probable cause to save this Warrant for good faith purposes. *See Clark,* 638 F.3d at 103 (noting that overbreadth concerns are most apparent where the affidavit in support of the warrant is "bare bones" and "totally devoid of factual circumstances to support conclusory allegations").

specifically "responsive" set of warrant returns. (Def's. Mot. at 17.) In the absence of responsive productions, Daskal assumes that the Government is unconstitutionally searching his Phones for whatever it wishes, whenever it wishes to do so. (*Id.* at 18; Def's Reply at 12; Def's. Supp. Reply at 5-6.) This, according to Daskal, raises issues over whether the Government conducted a responsiveness review at all, how it did so, whether the Government separately searched information it knew to be unresponsive to the Federal Warrants, and whether any review was completed within a constitutionally reasonable amount of time. (*See* Def's Reply at 12; Def's. Supp. Reply at 5-6.) Relating to all of these issues is the question of whether the disclosure of a responsive set of warrant returns is even required under the Fourth Amendment or Federal Rules of Criminal Procedure.

The Government states that it completed its review of Daskal's Phones and Computers for the purposes of identifying responsive materials in January 2021 and turned over all extractions from these devices to the Defense in July 2021. (Spivack Aff. ¶ 10; Gov't Mot. at 25.) The complete raw set of extractions turned over did not indicate which materials were responsive to the Federal Warrants. (*Id.*) The Government ultimately provided Daskal with a drive containing responsive returns from the Federal Warrants on June 1, 2023. (Dkt. 86.)

"The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). Reasonable execution of a warrant requires prompt review of the seized materials, including any and all digital files, to determine whether they fall within the scope of the warrant. *United States v. Mendlowitz*, No. 17-CR-248 (VSB), 2019 WL 1017533, at *11-13 (finding that reasonable execution of a warrant authorizing search of digital files entails conducting a responsiveness review) (S.D.N.Y. Mar. 2, 2019); *Nejad*, 436 F. Supp. 3d at 734; *Metter*,

860 F. Supp. 2d at 215; *Wey*, 256 F. Supp. 3d at 383-84. "The object of responsiveness review is to determine whether the evidence that the government seized fell within the scope of the categories of information sought in the search warrants." *Nejad*, 436 F.3d at 734. Nonetheless, the Second Circuit has acknowledged that fully segregating responsive and non-responsive digital evidence may be impossible. *See United States v. Ganias*, 824 F.3d 199, 212-13 (2d Cir. 2016).

The Spivack Affidavit plainly refutes Daskal's assertion that "the Government does not intend to conduct responsive review at all[.]" (Def's. Mot. at 18; *see* Spivack Aff. ¶ 10 (attesting to "completing a review of Daskal's Phones and the Daskal Computers" in order to "identif[y] which materials were responsive to the warrants").) Daskal's reply, that there is no indication that the Government has completed its search of his Phones and Computers, (Def's. Supp. Reply at 6-7), disregards Agent Spivack's sworn statements yet provides no reason to doubt them. (Spivack Aff. ¶ 10; *see also* Gov't. Mot. at 25.) The court is satisfied that the Government has conducted a responsiveness review of Daskal's Phones and Computers. The execution of a responsiveness review distinguishes this case from *Metter*, where the Government conducted no such review. 860 F. Supp. 2d at 215. It also, at a baseline, indicates that the Government did not treat the Federal Phones Warrant as a general warrant.

There are also no apparent problems with the manner in which the Government conducted responsiveness review. Though the Spivack Affidavit does not specify the Government's procedure for conducting this review, neither Federal Rule of Criminal Procedure 41 ("Rule 41") nor the Federal Warrants compel a specific method. Rule 41 provides that unless otherwise specified, a warrant "authorizes a later review of the media or information consistent with the warrant." Fed. R. Crim. P. 41(e)(2)(B). Officers are also, if authorized under the warrant, permitted to retain

a copy of the electronically stored information that was seized or copied. *Id.* The Government appears to have done just that with the ESI taken from Daskal's devices. The Federal Warrants them-selves do not specify any procedures for the Government to comply with in its review of ESI from Daskal's devices. (*See gen-erally* Ex. L to Def's. Mot.; Ex. M to Def's. Mot.; Ex. O to Def's. Mot. (Dkt. 50-8); Ex. P to Def's. Mot. (Dkt. 50-8).)[13] The Second

---

[13] Daskal also takes issue with the Government's purported failure to re-turn the Federal Phones and Computers Warrants to duty magistrates along with an inventory of materials seized under the Warrants. (Def's. Mot. at 17.) Rule 41 notes that "[a]n officer present during the execution of the warrant must prepare and verify an inventory of any property seized." Fed. R. Crim. P. 41(f)(1)(B). "In a case involving the seizure of electronic storage media or the seizure or copying of electronically stored information, the inventory may be limited to describing the physical stor-age media that were seized or copied." *Id.* Rule 41 thus does not require the Government to turn over an inventory of responsive digital files to the duty magistrate. Though the Government has not indicated that it re-turned either the Federal Phones or Computers Warrants to the duty magistrate with an accompanying inventory list, both Warrants them-selves list specific devices for search—the Daskal Phones and Computers. (Ex. L to Def's. Mot. at 22; Ex. N to Def's. Mot. at 22.) Both the Daskal Phones and Computers were also in FBI custody when the Warrants were issued. (Ex. L to Def's. Mot. ¶¶ 14-15; Ex. N to Def's. Mot. ¶¶ 20-21.) It is difficult to see the added benefit of requiring the Government to again submit a list of seized items, which would not change, after being granted authority to search them.

Moreover, a Rule 41 violation only leads to suppression where "(1) there was prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Brown*, No. 20-CR-293 (WFK), __ F. Supp. 3d __, 2022 WL 4238459, at *15 (E.D.N.Y. Sept. 14, 2022). Daskal has not shown that either of these factors were met in regard to any Government failure to return the Federal Warrants and their inventory to a magistrate judge.

Circuit has also not imposed any other search protocols or minimization techniques for executing digital search warrants. *Hadden*, 2022 WL 1409600, at *4.

Relatedly, Daskal raises the specter of the Government searching ESI from his Phones and Computers that it knew to be unresponsive to the Federal Warrants. (Def.'s Supp. Reply at 7.) Following completion of responsiveness review, a government search of ESI known to be unresponsive to a warrant plainly exceeds the scope of search authorized under that warrant. *Nejad*, 436 F. Supp. 3d at 736. Daskal has not produced any evidence that the Government has conducted such additional searches; he merely assumes it has done so based on the Government's failure to produce responsive returns. This claim is conjectural and runs counter to the good faith imputed to law enforcement executing search warrants. *See Shi Yan Liu*, 239 F.3d at 140.[14] The Government's June 1, 2023 letter to the court also disavows Daskal's "argument that the government is continuing to engage in an unconstitutional search." (June 1, 2023 Letter at 1.) Thus, Daskal has not shown that the Government has conducted additional searches of nonresponsive ESI. His briefing is also not sufficiently nonconjectural to establish this as a contested issue of fact warranting an evidentiary hearing. *Watson*, 404 F.3d at 167.

Moreover, the Government did not unreasonably delay in its review of Daskal's Phones. There is no established upper limit as to

---

[14] Daskal's motion assumes much based on what "appears" from the Government's failure to produce a set of responsive returns, including that the Government did not limit its search to the list prescribed in the Federal Phones Warrant, that it "did not intend to conduct responsive reviews at all," and that the Government seized Daskal's Phones intending to search them in a manner consistent with a general warrant. (Def.'s Mot. at 17-19.) Putting aside the good faith typically imputed to law enforcement agents executing warrants, accepting these conclusions requires making substantial assumptions from the premise that Daskal failed to disclose responsive materials.

when the government must review seized electronic data to determine whether the evidence falls within the scope of the warrant. *Metter*, 860 F. Supp. 2d at 215. "A substantial amount of time can be involved in the forensic imaging and review of information . . . due to the sheer size of the storage capacity of media." Fed. R. Crim. P. 41 Advisory Committee's Note (2009). "Courts have previously determined that delays of 10 months, or more, in reviewing electronic data are not *per se* unreasonable, even when the government does not furnish a basis for the delay in searching electronic data." *United States v. Estime*, No. 19-CR-711 (NSR), 2020 WL 6075554, at *14 (S.D.N.Y. Oct. 14, 2020). In fact, even a three-year review has been found to be reasonable in light of the size of the data to be searched. *See Nejad*, 436 F. Supp. 3d at 735; *see also Mendlowitz*, 2019 WL 1017533, at *12 (finding an 18-month review not "incongruous with the need for through review of the . . . exceedingly large" universe of documents); *United States v. Jarman*, 847 F.3d 259, 267 (5th Cir. 2017) ("Numerous cases hold that a delay of several months or even years between the seizure of electronic evidence and the completion of the government's review of it is reasonable.") The Government has not disclosed when its review of the ESI from Daskal's Phones began. The Federal Phones Warrant was executed in February 2019 and the Government completed its review in January 2021. (Ex. M to Def's. Mot.; Gov't Opp. at 25.) The maximum possible review period was therefore 23 months. Such a period is certainly not brief, but here it was not unreasonably long considering the challenges of searching ESI from electronic devices, *see United States v. Zottola*, No. 18-CR-609 (HG), 2022 WL 3682222, at *4 (E.D.N.Y. Aug. 25, 2022), and the interruption caused by the COVID-19 pandemic.

Daskal argues that the Government's failure to produce responsive markings suggests that it did not complete responsiveness review in a reasonable amount of time. (Def's. Supp. Reply at 6-

7.) But Daskal provides no support for the proposition that responsiveness review is not deemed complete until responsive returns are turned over. Nor has the court found any caselaw to this effect. "The object of responsiveness review is 'to determine whether the evidence that the government seized fell within the scope of the categories of information sought in these search warrants.'" *Nejad*, 436 F. Supp. 3d at 734 (quoting *Metter*, 860 F. Supp. 2d 214-15). Turnover of responsive materials is not inherent to this objective, and there is thus no reason that responsiveness review would be completed upon the making of such disclosure.

To that end, the turnover of responsive materials may not even be *required at all*. It may be true that turnover of materials marked as responsive helps courts ensure that the Government's search of seized materials stays within the confines of a warrant. Absent such turnover, it may be more difficult for a court to discern whether the Government has effectively conducted a general search, *see Metter*, 869 F. Supp. 2d at 216, or searched materials that it knows to be unresponsive to the warrant. *See Nejad*, 436 F. Supp. 3d at 736-37. Indeed, demarcating responsive ESI has certainly been common practice in this Circuit. *See United States v. Shea*, No. 20-CR-412 (AT), 2022 WL 4298704, at *6 (S.D.N.Y. Sept. 19, 2022); *Mendlowitz*, 2019 WL 1017533, at *11.[15]

Still, Daskal has not provided the court with any authority stating that the Government bears an obligation to indicate to criminal

---

[15] At oral argument over Daskal's motion, the Government represented that it went "above [its] obligations" by turning over all materials seized under the Federal Warrants rather than only responsive materials. (Oral Arg. Tr. at 29.) Though the Government may have been well-intentioned, this approach actually made it, at least initially, more difficult to police the Government's compliance with the Fourth Amendment.

defendants the specific ESI from seized electronics that is responsive to a warrant. And the court has not been able to identify legal reasoning that would support such an obligation. One could in theory conceive of such a requirement as stemming from an independent obligation to purge nonresponsive files from Government custody. But in reality, no such independent obligation exists. The Government is not required to divest itself of nonresponsive ESI contained on seized electronic devices. *Mendlowitz*, 2019 WL 1017533, at *12; *see also Ganias*, 824 F.3d at 212-213 (noting the challenges of segregating digital files). It may also be the case that "reasonableness" in the execution of a warrant authorizing search of ESI entails turning over responsive materials to a defendant. *See Ramirez*, 523 U.S. at 71. But the court has not identified precedent supporting such a theory. Another possible argument in favor of such an obligation could be that failing to furnish a criminal defendant with the Government's responsive classifications may inhibit their ability to object to such classifications for being outside the scope of a warrant. *See, e.g., Nejad*, 436 F. Supp. 3d at 736. If this were the basis for a requirement to provide responsive markings, however, a violation could be remedied by making disclosure of responsive materials with sufficient time to levy objections, as has been done here. Regardless, though providing responsive returns to a criminal defendant is undoubtedly incidental to many of the Government's obligations in executing a search warrant, it is not in itself an independent obligation.

Even if the Government's failure to provide responsive materials to the Defendant did give rise to a Fourth Amendment violation, blanket exclusion of materials obtained under the Federal Phones Warrant would only be appropriate where the Government "(1) effect[s] a widespread seizure of items that were not within the scope of the warrant, and (2) do[es] not act in good faith." *Shi Yan Liu*, 239 F. 3d at 140. The court in *Metter* found both prongs

were met when the Government failed to conduct any responsiveness review of forensic images from seized computers despite repeated requests from the defense and the court to do so. 860 F. Supp. 2d at 216. Daskal has made neither showing here, instead asking the court to assume both prongs were met based solely on the Government's failure to turn over responsive materials. To the contrary, the Government's statements at oral argument, (*see* Oral Arg. Tr. at 29), suggest that its decision not to turn over responsive materials was not a deliberate effort to flout the Fourth Amendment. *See Shea*, 2022 WL 4298704, at *6. The Government's June 1, 2023 turnover of responsive materials further undercuts an inference of bad faith. So too does the challenge of locating an obligation to provide responsiveness review in caselaw; a bad faith violation of an obligation is more difficult to infer where that obligation is not well established.[16]

The Government has now provided Daskal with the sought-after responsive returns. If any remedy was needed, this disclosure would suffice. The turnover was made approximately six weeks before the start of trial, giving the Defense sufficient time to conduct any desired review of responsive ESI. *See Shea*, 2022 WL 4298704, at *6 (finding seven weeks to be sufficient to review responsive ESI). This is also not the first time that Daskal has seen these materials, as he was provided with the full extractions from his Phones and Computers in July 2021. (Gov't. Opp. at 25.) Daskal remains free to object to the Government's classification of specific files or documents as responsive for being outside the scope of the Federal Phones Warrant. *See, e.g., Nejad*, 436 F.

---

[16] To the extent that this failure gives rise to a Rule 41 violation, exclusion would only be warranted where "(1) there was prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *Brown*, 2022 WL 4238549, at *15. The Government's lack of bad faith would prevent exclusion on this basis.

Supp. 3d at 736. The court will respond to such objections if they are made. Otherwise, however, the court will not impose a blanket exclusion of materials obtained under the Federal Phones Warrant due to the Government's extended delay in providing responsive materials to Daskal.

In sum, the court declines to suppress evidence from the Federal Phones Warrant for reasons of taint, unreasonable delay in obtaining the Warrant, and facial invalidity. The court will also not suppress evidence due to the Government's failure to execute the Warrant in a reasonable manner, but Daskal remains free to object to improper classification of digital files marked as responsive.

### D.  New York Residence Warrant

Daskal further seeks to invalidate the New York Residence Warrant, arguing that it was overbroad, lacking sufficient probable cause, and not particularized, (Def's. Mot. at 25-28), as well as improperly executed. (*Id.* at 28-31.) These criticisms miss the mark.

#### 1.  Facial Validity

The New York Residence Warrant was valid on its face. It was sufficiently particularized because it listed the offenses for which police established probable cause, described the place to be search (Daskal's residence), and specified categories of evidence to be seized. (Ex. I to Def's. Mot. (Dkt. 50-8) at 1.) Though this Warrant did not expressly limit search of the materials to be seized to the crimes under investigation, this is not needed where the crimes under investigation are stated elsewhere in the warrant and their relation to the search is easily discernable. *See Nejad*, 436 F. Supp. 3d at 727; *Alston*, 2016 WL 2609521, at *4. Though there was no time frame specified in the Warrant, a time frame is not necessarily required for a warrant to be particularized. *See United States v. Jacobson*, 4 F. Supp. 3d 515, 526

(E.D.N.Y. 2014); *Hernandez*, 2010 WL 26544, at *11. The warrant included a reasonably detailed descriptions of the items to be seized, a clear list of the crimes under investigation, and a substantive limit on search of an important category of ESI in the form of a directive to search Daskal's electronics for "records of communication" *only* "between the subject and the witness." (Ex. I to Def's. Mot. at 2) This information was sufficient to render the New York Residence Warrant sufficiently particularized despite its lack of temporal parameters.[17] *Cf. Rosa*, 626 F.3d at 61-62 (finding a warrant to search electronics to be unparticularized where the warrant did not state "the specific criminal activity alleged or the type of digital evidence to be sought from the electronic items seized").[18]

Daskal argues that the New York Residence Warrant was insufficiently particularized because it failed to identify a specific computer for search and seizure. (Def's. Mot. at 29-30.) He argues that the Fourth Amendment's requirement of probable cause to search a "particular place" mandates the express identification of that "place" on the face of the warrant—or, in this case, the express identification of a specific computer for search. In its summary order in *Beal*, the Second Circuit noted a lack of authority for the proposition that "a warrant must identify computers and electronic media as 'places to be searched,'" and concluded that, under existing case law, a warrant's authorization of search of electronic data permitted seizure of unspecified

---

[17] Like the New York Phones Warrant, the New York Residence Warrant does not incorporate its supporting affidavit because it does not use deliberate and unequivocal language of incorporation. (*See* Ex. I to Def's. Mot. at 1 (noting "[p]roof by affidavit . . . having been made this day before me by Assistant District Attorney Kevin O'Donnell").)

[18] Daskal's analogy to *Winn* and *Zemlyansky* are again unpersuasive, (Def's. Mot. at 27-28), because both cases involved warrants that omitted the crimes under investigation. *See Winn*, 256 F. Supp. 3d at 384; *Zemlyansky*, 945 F. Supp. 2d at 454.

electronic devices. 730 F. App'x at 32-33. Like the defendant in *Beal*, Daskal has failed to apprise the court of any compelling authority to this effect.[19] Daskal takes specific issue with the large number of electronic devices taken from his home. (Def's. Mot. at 27-28.) But discovery of a high volume of electronic devices upon arrival at a residence does not create new requirements for law enforcement, including where, as here, law enforcement does not know the full extent of electronic devices at a residence before executing the warrant. (*See id.* at 29.) The court thus sees no reason to impose a new rule that particularity entails identification of specific computers for search and seizure. Even if the court were to impose such a rule today, the good faith exception would prevent exclusion on this basis because a reasonable officer executing the New York Phones Warrant would have been unaware of this post-dated requirement.

This Warrant was also not overbroad. The affidavit in support of the New York Residence Warrant stated that Daskal sent the Victim explicit electronic messages detailing his sexual fantasies. (Ex. H to Def's. Mot. ¶ 8.) It also established that she sent Daskal, at his direction, a scanned letter referring to their alleged sexual encounters as therapy, to be disclosed if their relationship was discovered. (*Id.*) Taken together, these statements provided sufficient probable cause to support the search of Daskal's electronic devices for images, messages, and scans. Daskal himself admits as much. (Def's. Mot. at 30 ("[T]he NY Residence Warrant may plausibly provide probable cause to believe that *some* computers could contain the complainant's communications[.]").) The New

---

[19] Daskal cites to two cases for this proposition, *United States v. Clark*, 638 F.3d 89 (2d Cir. 2011) and *United States v. Romain*, No. 13-CR-724 (RWS), 2014 WL 6765831 (S.D.N.Y. Dec. 1 2014). (*See* Def's. Mot. at 29.) *Clark* speaks generally about how the "particular place" requirement protects against general warrants, 638 F.3d at 94, and *Romain* hardly discusses particularity necessitating description of a "particular place." 2014 WL 6765831, at *4.

York Residence Warrant also authorized seizure of "all vibrators and other sex toys," as well as computers, cell phones, other devices, and related materials that would enable search of the seized electronics—*i.e.*, notes containing computer-related information. (Ex. H to Defs. Mot. ¶ 16.)[20] The Warrant allowed for search of the seized electronics for "records of communication between the subject and the witness" and "any and all data, information, or images evidencing internet usage history," in addition to information that would enable such searches. (*Id.* ¶ 17.) "[R]ecords of communication" are clearly related to the crimes under investigation. (*Id.*) Internet usage history records are more attenuated, but search of such records was still supported by sufficient probable cause given that Daskal and the Victim purportedly communicated over internet-based applications. (*Id.*) The Warrant was therefore not overbroad or wanting in probable cause. *See also Nelson*, 828 F. App'x at 806 (noting deference to a magistrate judge's finding of probable cause).

Daskal mischaracterizes the breadth of the seizure authorized under the New York Residence Warrant, claiming that it extended to "all handwritten or typed notes." (Defs. Mot. at 25.) This is incorrect. This Warrant authorized seizure of "all handwritten or typed notes containing computer-related information." (Ex. H to Defs. Mot. ¶ 16.) Given that state investigators were authorized to search for digital files on Daskal's electronics, there was sufficient probable cause to authorize seizure of handwritten notes that would enable them to complete this search. Though the New York Residence Warrant makes use

---

[20] The court also rejects Daskal's claim that the New York Residence Warrant was lacking in probable cause because the supporting affidavit relied almost entirely on the Victim's statements. (Defs. Mot. at 27 n.6.) "I[t] is well settled that an officer can rely upon a statement by a putative victim or eyewitness to establish probable cause unless the officer has reason to doubt the witness's veracity." *Washington v. Napolitano*, 29 F.4th 93, 110 (2d Cir. 2022).

of the term "any and all," it does so in reference to specific types of evidence authorized for seizure—like computers, vibrators and sex toys, and computer-related documents on how to use computer hardware—after listing the crimes under investigation at the outset. *Cf. George*, 975 F.2d at 77-78 (2d Cir. 1992) (finding a warrant's authorization to seize *any evidence* relating to the commission of the crime overbroad) (emphasis added).[21]

The New York Residence Warrant is thus neither overbroad nor insufficiently particularized and is valid on its face.

### 2.    Reasonableness in Execution

#### a.    Constitutional Violation

Daskal raises a number of issues regarding the execution of the New York Residence Warrant, including seizure of items outside the scope of the Warrant, the number of electronic devices taken from Daskal's residence, and delay in reviewing materials obtained under this Warrant. (Defs. Mot. at 26-31.) The first is seizure of materials outside the scope of the Warrant, such as "Hebrew blessings and documents from community leaders, rabbis and friends, and other similar personal effect." (*Id.* at 27.) "[O]fficers may not seize and retain items outside the scope of a warrant." *United States v. Lustyik*, 57 F. Supp. 3d 213, 230 (S.D.N.Y. 2014). "When items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of

---

[21] Even if it were not, the good faith exception would apply, and evidence obtained under this Warrant would not be subject to exclusion. The New York Residence Warrant was certainly not so unparticularized that a reasonable officer would have known that it was constitutionally invalid. *Groh*, 540 U.S. at 563. Moreover, even if its affidavit in support did not contain sufficient detail to provide probable cause for the full breadth of the Federal Phones Warrant, it undoubtedly contained sufficient probable cause to save this Warrant for good faith purposes. *See Clark*, 638 F.3d at 103 (noting that overbreadth concerns are most apparent where the affidavit in support of the warrant is "bare bones" and "totally devoid of factual circumstances to support conclusory allegations").

those items." *Id.* (quoting *Matias*, 836 F.2d at 747). To the extent that state investigators seized evidence outside the scope of the New York Residence Warrant, the proper remedy for this court's purpose is suppression of that evidence.[22] If the Government seeks to introduce materials obtained from Daskal's residence that are outside the scope of the New York Residence Warrant, such as "Hebrew blessings and documents from community leaders," Daskal is permitted to seek their exclusion. But the NYPD's seizure of some materials outside the scope of the New York Residence Warrant does not necessitate suppression of all evidence obtained under this Warrant. The extreme remedy of blanket suppression is only imposed in the most extraordinary cases where the search conducted by government agents actually resembles a general search. *Metter*, 860 F. Supp. 2d at 216. Daskal has not made such a showing here.

Moreover, because the New York Residence Warrant did not identify the specific electronic devices for search, the NYPD's seizure of approximately 30 computers from Daskal's residence was not beyond the scope of the Warrant. *See Beal*, 730 F. App'x at 32-33. The NYPD seized the electronics that they were authorized to under the Warrant. The sheer number of devices seized from Daskal's residence was more a reflection of just how many electronic devices Daskal kept at his home than an indicator of improper warrant execution.

As to delay in review, the Spivack Affidavit notes that the NYPD extracted forensic images from "certain" devices seized on May 16, 2018, but that neither the ADA "nor the assigned detective reviewed any of these images. (Spivack Aff. ¶ 11.) The NYPD thus

---

[22] If Daskal seeks return of property confiscated from his residence that is now in federal custody, he is free to file a motion for return of property under Rule 41(g). *See* Fed. R. Crim. P. 41. If he seeks the return of property in state custody, he can seek redress in state court, potentially under New York Criminal Procedure Law § 710.20. *See* N.Y. Crim. Proc. Law § 710.20.

appears not to have searched the seized computers to determine
which ones contained materials within the scope of the New York
Residence Warrant. (*See* Def's. Mot. at 30-31.) This plainly vio-
lated the Fourth Amendment's requirement that materials seized
under a warrant be reviewed in a timely manner. *Metter*, 860 F.
Supp. 2d at 215 (finding that the government could not "seize
and image electronic data and then retain that data with no plans
whatsoever to *begin* review of that data to determine whether
any irrelevant, personal information was improperly seized")
(emphasis in original); *United States v. Debbi*, 244 F.Supp.2d 235,
236-37 (S.D.N.Y. 2003) (suppressing warrant proceeds where
the government failed, for approximately seven months, to con-
duct any review of physical evidence seized in order to determine
responsiveness). There can be no reasonably timely review
where authorities hold electronics for years without even begin-
ning to look at the ESI stored therein. State investigators thus
violated the constitution in their review of computers seized from
Daskal's residence.

        b.     Application of the Exclusionary Rule

This alone does not, however, mandate application of the exclu-
sionary rule to computers seized under the New York Residence
Warrant in the instant federal prosecution. *State investigators,
not federal ones, violated the Constitution while executing the
New York Residence Warrant.* Federal investigators appear to
have only physically taken possession of the computers from
Daskal's residence after they obtained their own fully constitu-
tional warrant in September 2019. (*See generally* Ex. N to Def's.
Mot; Ex. O to Def's. Mot.) The affidavit in support of the Federal
Computers Warrant was not based on information obtained from
the New York Residence Warrant. It was instead based largely on
an FBI interview with the Victim, (*see* Ex. N to Def's. Mot. ¶¶ 5-
14), who identified the computers Daskal used during the rele-
vant time. (Spivack Aff. ¶ 10 n.1.) Agent Spivack also never

received nor reviewed any forensic images that the NYPD obtained from computers seized while searching Daskal's residence. (*Id.* ¶ 11.)[23] Data from the Daskal Computers obtained under the New York Residence Warrant thus did not assist federal investigators in obtaining the Federal Computers Warrant. The only benefit the Government received from execution of the New York Residence Warrant, in regard to seized computers, was easy transfer of Daskal's Computers to federal custody in August 2019. (Ex. T to Def's. Mot. (Dkt. 50-13) at 2.)

This is thus not a situation where a sovereign must be precluded from introducing evidence due to a constitutional violation incurred in their own execution of a warrant. *See, e.g., Metter,* 860 F. Supp. at 214-216. The Defendant here seeks exclusion of evidence in a criminal prosecution brought by one sovereign for a constitutional violation incurred by another sovereign. The other sovereign's violation also conferred limited value on the prosecuting sovereign. This raises issues of good faith reliance by the prosecuting sovereign, of the deterrent value of imposing the exclusionary rule, and of attenuation.

The logic underpinning the Supreme Court's decision in *Herring v. United States* is helpful in addressing these issues. 555 U.S. 135 (2009). In *Herring* the defendant sought to suppress evidence seized from his vehicle during a search incident to his arrest. *Id.* at 138. The defendant's arrest was predicated on a report of an outstanding arrest warrant made by law enforcement in a different county, which turned out to be a mistake due to "negligent bookkeeping." *Id.* at 137-38. The Supreme Court denied the defendant's motion because the error was the result of isolated negligence attenuated from the arrest, which did not implicate sufficient police culpability and deterrence to warrant application

---

[23] The ADA and the lead NYPD Detective assigned to the case also did not receive or review such forensic images. (Spivack Aff. ¶ 11.)

of the exclusionary rule. *Id.* at 137-39. In so ruling, the court emphasized that the exclusionary rule applies where the benefits of incremental deterrence outweigh its substantial social costs. *Id.* at 141. The deterrent effect of exclusion varies to an extent on the culpability of law enforcement, *id.* at 141, and only conduct that is "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence" implicates sufficient culpability to necessitate exclusion. *Id.* at 144; *see also In re 650 Fifth Ave.*, 934 F.3d at 161-62.

Following *Herring's* lead, this court attempts to balance the deterrent effect of exclusion with its social costs. In instant matter, there is limited information on the culpability of state investigators. It is unclear from the record why state investigators failed to review the computers seized under the New York Residence Warrant. ADA O'Donnell represented during a September 2019 hearing in state court that it was not feasible for federal authorities to search all 29 or 30 devices seized. (Ex. R to Def's. Mot. (Dkt. 50-11) at 3.) This could potentially suggest state authorities did not begin to search the computers because they lacked sufficient information to conduct a targeted search—an innocent, if not negligent, explanation for failing to conduct a review. Perhaps more significantly, Daskal has not provided any evidence of deliberate, reckless, or grossly negligent conduct on the part of state investigators. *Herring*, 555 U.S. at 144. This differs from *Metter*, where the court inferred a "lack of good faith by the government . . . from its conduct in the case." 860 F. Supp. 2d at 216.

The intersovereign nature of the Constitutional violation also reduces the deterrent effect of exclusion. *See United States v. Janis*, 428 U.S. 433, 458 (1976) ("[T]he deterrent effect of the exclusion of relevant evidence is highly attenuated when the 'punishment' imposed upon the offending criminal enforcement

officer is the removal of that evidence from . . . a different sovereign.") *Yoc-Us v. Attorney General United States*, 932 F.3d 98, 110 (3d Cir. 2019) ("This marginal deterrence is further attenuated by the intersovereign nature of this case[.]").[24] As does, as described in greater detail above, the attenuation between the Constitutional violation at issue—state authorities' failure to review computers seized under the New York Residence Warrant—from the search at issue—the federal search of the Daskal Computers pursuant to the Federal Phones Warrant. *See Herring*, 555 U.S. at 136.

The court cannot at this time measure the *full* social cost of suppression. The Government has not, and is currently under no obligation to, disclose to the court the full extent of evidence discovered on the Daskal Computers that it may seek to introduce at trial. *See, e.g., United States v. Smith*, No. 11-CR-724 (KMW) 2012 WL 1700465, at *7 (S.D.N.Y. May 15, 2012) (discussing the impact of specific evidence the government sought to offer in weighing the social cost of evidence.) In its June 1, 2023 letter to the court memorializing turnover of responsive returns to the Defense, however, the Government reported finding "files that contain suspected child pornography" on Daskal's Computers. (June 1, 2023 Letter (Dkt. 86) at 1 n.1.) Such evidence may be probative and significant to the Government's case at trial, and its suppression would likely exact "a costly toll upon truth-seeking and law enforcement objectives." *Herring*, 555 U.S. at 141. The court thus declines to apply the exclusionary rule to evidence obtained under the New York Residence Warrant in the instant prosecution on account of state investigators' failure to begin

---

[24] The Second Circuit has noted, however, that the exclusionary rule could apply to intersovereign violations in some instances. *See Tirado v. C.I.R.*, 689 F.2d 307, 313 (2d Cir. 1982) ("We would not rule out the possibility that in some circumstances the exclusionary rule should be applied in intersovereign violations, perhaps if state narcotics or environmental officials unlawfully seize evidence later used by their federal counterparts.")

search of computers seized under the New York Residence War-
rant within a constitutionally reasonable time.[25]

In sum, the court will not suppress evidence obtained under the
New York Residence Warrant.

### E.   Federal Computers Warrant

Finally, Daskal moves to suppress evidence obtained pursuant to
the Federal Computers Warrant for many of the same reasons
that he sought suppression of evidence from the Federal Phones
Warrant. (Defs. Mot. at 15-22.) The two federal Warrants au-
thorized search of the same categories of items and were
supported by "largely identical" affidavits. (*See* Ex. L to Defs.
Mot.; Ex. N to Defs. Mot.; *see also* Defs. Mot. at 16.)

For the same reasons discussed in regard to the Federal Phones
Warrant, *see supra* Section III.C.3, the court rejects Daskal's facial
challenges to the Federal Computers Warrant. The Federal Com-
puters Warrant was not overbroad in its enumeration of items to
be searched from the devices listed in Attachment A. (Ex. N to
Defs. Mot. ¶ 11; Ex. O to Defs. Mot. at 1.) The affidavit support-
ing the Federal Computers Warrant, which discussed the Victim's
transmission of nude images to Daskal, (Ex. N to Defs. Mot. ¶
11), provided sufficient probable cause to authorize search for
data related to transmission of child pornography. *See supra* Sec-
tion III.C.3. It also provided probable cause to search for
communications with and images of the Victim. The Federal
Computers Warrant was also not unparticularized. Attachment B

---

[25] Even though an evidentiary hearing could produce further information
about the culpability of state investigators in their failure to review the
Daskal Computers, such a hearing is not required because it would not
entitle Daskal to relief as a matter of law. *Chandler*, 164 F. Supp. 3d at 376.
Even if information on state investigators' culpability were presented, the
court would decline to apply the exclusionary rule due to the intersover-
eign nature of the constitutional violation, its attenuation from the instant
case, and the high cost of suppressing the Daskal Computers.

to the supporting affidavit listed the crimes under investigation, described the specific categories of data to be searched, and tied these categories to specific crimes under investigation. (Ex. N to Def's. Mot. at 23-26; Ex. O to Def's. Mot. at 1.) It also specified the time period in which the offenses under investigation were alleged to have occurred. (Ex. N to Def's. Mot. at 23.) The particularity requirement was clearly met. *See Purcell*, 967 F.3d 178; *Kamaldoss*, 2022 WL 1200776, at *18. Here too, as with the Federal Phones Warrant, the good faith exception would prevent suppression even if the Federal Computers Warrant were overbroad or unparticularized. *See supra* Section III.C.3

The Federal Computers Warrant also does not raise any *Smith* problems, as it authorized search of materials that were already seized from Daskal pursuant to a valid warrant, or at the very least a warrant a reasonable law enforcement officer would have believed to be valid—the New York Residence Warrant. There was therefore no concern of unreasonable delay in obtaining a warrant to search temporarily seized items. And, again, even if *Smith* did apply, the good faith exception would prevent exclusion of evidence found within the Daskal Computers on this basis because the 2019 Federal Computers Warrant was issued before the Second Circuit's 2020 decision in *Smith*. *See supra* Section III.B.3.

Turning to execution of the Federal Computers Warrant, the Government conducted responsiveness review of Daskal's Computers and turned over the complete extracts from these devices to the Defense. (Spivack Aff. ¶ 10.) Assuming the Government began its review of Daskal's Computers as soon as it executed the Federal Computers Warrant in September 2019, 15 months had elapsed by the time it finished the review in January 2021. (Gov't Opp. at 25). The 23 months that the Government took to complete review of Daskal's Phones was reasonable. So too was its 15-month review of Daskal's Computers. On the issue of whether

the Government failed to provide Daskal with responsiveness re-
view of ESI obtained under the Federal Computers Warrant until
June 1, 2023, the court returns the same conclusions as it did
with respect to the Federal Phones Warrant. *See supra* Section
III.C.4. Accordingly, the court does not exclude evidence ob-
tained under the Federal Computers Warrant.

### F.  Conclusion

In sum, Daskal's motion to suppress is DENIED in regard for all
four warrants. Daskal remains free to renew objections for mis-
classification of responsive material under the Federal Phones
and Computers Warrants.

## IV. MOTION FOR A BILL OF PARTICULARS

Daskal also moves the court for a bill of particulars. (Mot. at 31.)

"Rule 7(f) of the Federal Rules of Criminal Procedure permits a
defendant to seek a bill of particulars in order to identify with
sufficient particularity the nature of the charge pending against
him, thereby enabling defendant to prepare for trial, to prevent
surprise, and to interpose a plea of double jeopardy[.]" *United
States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A bill of
particulars is required "only where the charges of the indictment
are so general that they do not advise the defendant of the spe-
cific acts of which he is accused." *United States v. Mackey*, No. 21-
CR-80 (NGG), 2022 WL 2093012, at *2 (E.D.N.Y. May 13, 2022)
(quoting *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.
1990)).

"The ultimate test is whether the information sought is necessary,
not whether it is helpful." *Id.* "The Government may not be com-
pelled to provide a bill of particulars disclosing the manner in
which it will attempt to prove the charges, the precise manner in
which the defendant committed the crimes charged, or a preview
of the Government's evidence or legal theories." *United States v.*

*Perryman*, 881 F. Supp. 2d 427, 430 (E.D.N.Y. 2012). Courts generally "deny requests for bills of particulars concerning the wheres, whens, and with whoms of the crime." *United States v. Ramos*, No. 06-CR-172 (LTS), 2009 WL 602977, at *1 (S.D.N.Y. Mar. 3, 2009). Whether or not to grant a bill of particulars rests within the sound discretion of the district court. *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).

The court finds that a bill of particulars is not required. The allegations here are not "so general" that Daskal is not on notice of the specific acts which he is accused of committing. The Government has brought three charges: (1) Travel with Intent to Engage in Illicit Sexual Conduct; (2) Transportation of Minor with Intent to Engage in Criminal Sexual Activity; (3) and Travel with Intent to Engage in Illicit Sexual Conduct—all arising from his conduct with a single Victim over an approximately four-month period. These charges are not particularly complex or difficult to understand. (*See generally* Indictment.) The Indictment charging Daskal further details the Government's allegations against him, as does the Government's brief in opposition to the instant motion. (*See generally id.*; Gov't. Opp. at 2-6.) Pretrial discovery also further expounds on these allegations. (*See* Dkts. 19, 68, 80.) In this context, the court is satisfied that the information provided to Daskal prevents surprise and gives him more than sufficient information to prepare a defense. *See United States v. Rogas*, 547 F. Supp. 3d 357, 367 (S.D.N.Y. 2021) (denying bill of particulars based "on the totality of the information available to the defendant").

Rather, Daskal's motion for a bill of particulars amounts to a request for the "whens, wheres, whats, and with whoms" of the charged crimes. (*See* Def's. Mot. at 33 (noting the need for information on "details of time, place, and occurrence of each alleged incident").) Such requests ordinarily do not warrant a bill of particulars. *See Ramos*, 2009 WL 602977, at *1. Daskal's cite to

*United States v. Siddiqi* is also unconvincing, as this case pertains to the need to provide dates of unlawful acts in the context of bribery charges. No. 06-CR-377 (SWK), 2007 WL 549420, at *2 (S.D.N.Y. Feb. 21, 2007) (citing to other cases about disclosure of dates related to bribery charges). To the contrary, courts in this Circuit have regularly denied requests for bills of particulars for charges of violating 18 U.S.C. § 2423(a). (Gov't Opp. at 33.) "Fairly large time windows in the context of child abuse prosecutions" rather than "specific dates of the offenses" do not conflict with constitutional notice requirements. *United States v. Young*, No. 08-CR-285 (KMK), 2008 WL 4178190, at *2 (S.D.N.Y. Sept. 4, 2008). This rule applies to the instant allegations.

In sum, Daskal's request for a bill of particulars is DENIED, as is his request to limit evidence on Count Two to the four dates in August 2017 that the Government highlighted.

## V.  CONCLUSION

For the reasons stated above, Daskal's motion to suppress is DE-NIED and his motion for a bill of particulars is also DENIED. Daskal may still renew objections to misclassification of responsive materials under the Federal Phones and Computers Warrants.

SO ORDERED.

Dated:    Brooklyn, New York
          June 9, 2023

                                        s/Nicholas G. Garaufis
                                        ―――――――――――――――――
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge