

*Ilana Haramati*
*Partner*
Direct (646) 860-3130
Fax (212) 655-3535
ih@msf-law.com

June 20, 2023

**VIA ECF**

Hon. Nicholas G. Garaufis
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Courtroom 4D South
Brooklyn, NY 11201

    Re:    *United States v. Jacob Daskal*, **21-cr-110 (NGG)**

Dear Judge Garaufis:

    We represent defendant Jacob Daskal in the above-referenced matter. We write to respectfully move *in limine* to: (1) exclude Jane Doe's statements in text messages and a May 9, 2018 controlled call as inadmissible hearsay; and (2) preclude the government from referring to Jane Doe as a "minor" or "minor victim" in its presentation of evidence or argument at trial.

**I.    Statement Made by Jane Doe by Text Message and in a Controlled Call are Inadmissible Hearsay**

    **A.    *Jane Doe's Text Messages and Recorded Statements Included Inflammatory Accusations To Which Mr. Daskal Did Not Respond***

    Mr. Daskal expects that the government will seek to introduce two sets of hearsay statements from Jane Doe: (1) statements that Jane Doe made to Mr. Daskal on a controlled call recorded by the NYPD on May 9, 2018; and (2) text messages that Jane Doe sent to Mr. Daskal's phone in January and February 2018, after the end of the alleged conduct in November 2017. In both instances, while Mr. Daskal's statements may be admissible as statements of a party-opponent under Federal Rule of Evidence 801(d)(2)(A), Jane Doe's statements—many of which are provocative—remain inadmissible hearsay.[1]

---

[1] Because the government has yet to produce its trial exhibits, we do not have clarity regarding the portions of the controlled call and text message chains the government may seek to introduce. Nonetheless, because many of Jane Doe's statements are inadmissible, we move *in limine* for their exclusion at this stage.

Hon. Nicholas G. Garaufis
June 20, 2023
Page 2 of 7

---

    During the controlled call, Jane Doe made numerous substantive statements regarding the allegations for which Mr. Daskal will be tried, for example:



These statements by Jane Doe, and numerous others like them throughout the controlled call, prompted largely non-substantive or unrelated responses from Mr. Daskal.

    The text message exchanges we expect the government to seek to introduce likewise include substantive hearsay statements by Jane Doe, which elicited little or no substantive response from Mr. Daskal, including for example:[2]



Mr. Daskal did not respond to this message, and others like it. In fact, this message was followed by another stating ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The text message strings that the government

---

[2] Many of the text message conversations extracted from Mr. Daskal's electronic devices do not identify which messages were sent from Mr. Daskal's devices, and which were received by Mr. Daskal's device. The content of certain of the messages, like those quoted herein, suggest the declarant, but others are ambiguous. Of course, the government bears the burden of demonstrating which messages are properly attributed Mr. Daskal, and thus admissible as statements of a party opponent under Federal Rule of Evidence 801(d). *See infra* § I.B.

extracted from the electronic devices contain numerous similar examples of substantive hearsay statements apparently made by Jane Doe.

Importantly, both the controlled call, and Jane Doe's text messages also post-date the allegations charged in the Indictment by several months. Thus, neither provides contemporaneous memorialization of the alleged interactions between Jane Doe and Mr. Daskal. If anything, Jane Doe's statements record only her intent to accuse Mr. Daskal of the conduct with which he is charged.

  **B.**  *The Government Bears the Burden of Proving Admissibility of Jane Doe's Hearsay Statements—It Cannot Do So*

Under the Federal Rules of Evidence, hearsay is any "declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *United States v. Dupree*, 706 F.3d 131,136 (2d Cir. 2013) (quoting Fed. R. Evid. 801(c)) (alteration in original). Hearsay is presumptively inadmissible, and "is admissible only if it falls within an enumerated exception" under the Federal Rules of Evidence. *Id.* "A party seeking to show that a particular record fits into a hearsay exception bears the burden of so demonstrating." *United States v. Murgio*, No. 15-CR-769 (AJN), 2017 WL 365496, at *6 (S.D.N.Y. Jan. 20, 2017) (citing *Brown v. Keane*, 355 F.3d 82, 88 (2d Cir. 2004)).

In determining whether an out of court statement is admissible, the Federal Rules of Evidence require careful parsing of that specific statement. Admission of part of a document or record does not render it admissible in its entirety. Rather, "a single document may simultaneously include admissible and inadmissible elements." *Id.* (citing *United States v. Rosa*, 11 F.3d 315, 332-33 (2d Cir. 1993)) (district court acted properly in admitting only certain portions of a report under a hearsay exception, but excluding others).

Merely because Mr. Daskal's statements memorialized in text messages and May 9, 2018 controlled call are admissible, does not permit wholesale introduction of Jane Doe's statements. *See, e.g., United States v. Sanchez*, No. 2-17-CR-136, 2019 WL 652508, at *4 (M.D. Fla. Feb. 15, 2019) (excluding, as hearsay, portion of a victim's statements to the defendant recorded in a controlled call and text messages). The government must provide an independent basis for admission of Jane Doe's hearsay statements. And, their mere presence in the same conversation as Mr. Daskal's statements does not automatically permit their introduction as the background or context for Mr. Daskal's statements. Indeed, the Second Circuit has rejected blanket introduction of hearsay statements as "background" emphasizing: "[t]here is no such exception to the hearsay rule." *United States v. Pedroza*, 750 F.2d 187, 200 (2d Cir. 1984).

Many of Jane Doe's statements include details, allegations, and facts not addressed in Mr. Daskal's statements. *See, e.g.,* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ They are all but useless as background or for context for Mr. Daskal's statements. Instead, it is clear that the government

would seek to offer Jane Doe's statements for their truth, *i.e.*, to establish the content of what Jane Doe asserts in the hearsay statements—an attempt to introduce Jane Doe's statements as merely background or context, is thus improper. *Pedroza*, 750 F.2d at 200 ("When statements by an out-of-court declarant are admitted as background, they are properly so admitted not as proof of the truth of the matters asserted but rather to show the circumstances surrounding the events, providing explanation for such matters as the understanding or intent with which certain acts were performed. Here there was no purpose for the hearsay testimony except for its truth.") (citation omitted).

Nor is Jane Doe's expected presence at trial a basis to admit her hearsay statements. The Second Circuit has held unequivocally that "[r]egardless. . . of whether the declarants testified to the matters presented by the hearsay statements, the admission of the hearsay testimony [i]s improper," as:

> [T]he federal courts do not recognize any exception to the hearsay rule, or . . . any exclusion from the definition of hearsay, which would permit testimony in court relating to the prior out-of-court statements of a witness merely because the witness is available at trial for cross-examination and subject to cross-examination concerning those statements.

*Pedroza*, 750 F.2d at 199–200 (district court erred in admitting hearsay statements based on "[t]he ground . . . that the declarant would be called as a witness and be available for cross-examination at trial.") (quotation marks and citations omitted). While Jane Doe may testify to her alleged interactions with Mr. Daskal, the government may not introduce her otherwise inadmissible out of court statements.

        C.    *The Government Cannot Introduce Jane Doe's Accusatory Hearsay Statements to Bolster her Trial Testimony*

To the contrary, Jane Doe's anticipated testimony renders any effort to admit of her hearsay statements all the more suspect. Mr. Daskal expects that Jane Doe's trial testimony will detail the government's allegations against Mr. Daskal, including allegations that they had a sexual relationship, when and how frequently they had such interactions, where any alleged sexual activity took place, and what Jane Doe and Mr. Daskal allegedly discussed during the timeframe of the charges. Permitting the government to introduce Jane Doe's recorded and written hearsay statements, made months after the alleged conduct, many of which simply repeat the assertions expected in her testimony, will serve only bolster Jane Doe's trial testimony. Such bolstering of a government witness is improper, further warranting exclusion of Jane Doe's hearsay statements. *See United States v. Demott*, 906 F.3d 231, 249 (2d Cir. 2018) (vacating conviction where pivotal hearsay testimony erroneously admitted and "Government, in addition, sought to bolster the credibility of the hearsay" with corroborating testimony); *Pedroza*, 750 F.2d at 199–200 (admission of testifying witness' hearsay statement inadmissible "since the hearsay testimony serves to bolster the testimony of the declarant."); *United States v. Ray*, No. 20-CR-110 (LJL), 2022 WL 558146, at *5 (S.D.N.Y. Feb. 24, 2022) (introduction of hearsay for "impermissible bolstering of a witness" prohibited, thus "the trial court has ample discretion to exclude prior

Hon. Nicholas G. Garaufis
June 20, 2023
Page 5 of 7

---

consistent statements that are cumulative accounts of an event.") (quotation marks and citations omitted).³

     The substance and timing of Jane Doe's statements in the text messages and controlled call, months after the Indictment's timeframe, are a further basis for their exclusion. Many of Jane Doe's statements in the text message chain appear designed to coax Mr. Daskal into agreeing with her accusations, rather than memorializing organic conversation or her thoughts at the time. For example, she repeatedly confronts him with inflammatory statements like ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See supra* § I.A. Moreover, the entirety of the controlled call, which was placed, conducted, and recorded at the direction of law enforcement on the day prior to Mr. Daskal's arrest by New York State authorities, was wholly intended to substantiate the accusations that Jane Doe will testify to at trial. Such hearsay statements of a "witness—who is acting as a law enforcement agent—designed to inculpate, in the form of a recording offered to prove the truth of the . . . witness's statements, are not admissible." *Carneglia*, 256 F.R.D. at 397; *see also United States v. Feliz*, 467 F.3d 227, 232 (2d Cir. 2006) ("a statement produced through the "[i]nvolvement of government officers" and with an "eye towards trial" is testimonial").

     For the same reason, Jane Doe's hearsay statements in the text messages and controlled call are also inadmissible under Federal Rule of Evidence 403. Neither memorializes the interactions between Jane Doe and Mr. Daskal during the timeframe of the charges. They thus provide little probative value beyond Jane Doe's account at trial. Instead, Jane Doe's written and recorded hearsay statements serve only to repeat the allegations that Jane Doe made ***after*** the period relevant to the Indictment had ended. Giving the government an opportunity to repeat Jane Doe's version of events, through hearsay evidence—particularly hearsay evidence created months after the alleged conduct—is obviously and overwhelmingly prejudicial to Mr. Daskal. Jane Doe's statements in text messages and the controlled call should be excluded under Rule 403 as well. *See, e.g., Sanchez*, No. 2-17-CR-136, 2019 WL 652508, at *6 (excluding "inflammatory" portions of text messages between defendant and alleged victim based on hearsay and FRE 403); *see also Carneglia*, 256 F.R.D. at 397 ("Because of the fine lines that must be drawn when a cooperating witness is recording his conversations, the court must carefully weigh the probative value of the

---

³ The government cannot overcome these barriers to admissibility merely by positing that Jane Doe's statements in the text message and controlled call are prior consistent statements under Federal Rule of Evidence 801(d)(1)(B). "Bolstering" testimony with repetitive hearsay statements remains improper. To warrant admission, "[t]he prior consistent statement thus must have 'some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony.'" *Ray*, No. 20-CR-110 (LJL), 2022 WL 558146, at *5 (quoting *United States v. Pierre*, 781 F.2d 329, 331 (2d Cir. 1986)). Jane Doe's text message and controlled call statement has none. They are merely instances of Jane Doe repeating the allegations forming the core of her testimony, as she prepared to formally accuse Mr. Daskal (as she will at trial). Such statements, made months after the alleged conduct ceased, add no indicia of reliability that would warrant admission as prior consistent statements.

evidence against the danger of unfair prejudice, or confusing or misleading the jury, when deciding whether to admit it.").

Jane Doe's out of court statements are inadmissible hearsay. Permitting their introduction at trial will serve only to repeat the allegations central to Jane Doe's testimony, improperly bolstering the government's star witness. The Court should accordingly exclude Jane Doe's statements in text messages and the May 9, 2018 controlled call.

## II. The Government Should Be Precluded from Referring to Jane Doe as a "Victim" or "Minor Victim"

The government should be precluded from referring to Jane Doe as a "victim" or a "minor victim," in argument or questions posed to witnesses, and from eliciting testimony referring to Jane Doe as a "victim" or a "minor victim." Use of these terms would violate Mr. Daskal's Fifth Amendment Due Process rights, central to which are the right to be presumed innocent and the right to have the government prove each and every element of the offenses charged. *See United States v. Birbal*, 62 F.3d 456, 462-63 (2d Cir. 1995) ("few elements of due process have been clearer than the necessity of informing the jury that, to convict, it must find each defendant guilty beyond a reasonable doubt of every element charged.").

The term "victim" inherently conveys to the jury a conclusion that Jane Doe has suffered due to Mr. Daskal's actions. Positing Jane Doe's victimization and Mr. Daskal's culpability the as the default, rather than propositions that the government must prove beyond a reasonable doubt, undermines the presumption of innocence, and constitutes improper burden shifting. Similarly, referring to Jane Doe a "minor" assumes a necessary element of the charges in the Indictment, that Jane Doe was under 18 during the timeframe alleged in the Indictment. *See* 18 U.S.C. § 2422(b), 2423(a). That too would rob Mr. Daskal of the presumption of innocence, and eliminate the constitutional protection requiring the government to prove every element of the offense charged beyond a reasonable doubt.

Finally, the government's use of the terms "victim" and "minor," particularly during closing argument, would invade the province of the jury to determine witness credibility and constitute impermissible vouching for Jane Doe. These terms would convey that Jane Doe's accusations are truthful, and because the government believes her, the jury should too. That is improper. *See United States v. Modica*, 663 F.2d 1173, 1178-79 (2d Cir.1981) (prosecutors generally may not "vouch for their witnesses' truthfulness" or "express [their] personal belief [s] or opinion[s] as to the truth or falsity of any testimony or evidence or the guilt of the defendant.") (citation and internal quotation marks omitted); *see also United States v. Newton*, 369 F.3d 659, 681 (2d Cir.2004) (vouching by prosecution prohibited as it risks imbuing the witness' testimony with "the imprimatur of the [prosecution] and may induce the jury to trust the [prosecution's] judgment rather than its own view of the evidence.") (quoting *United States v. Young*, 470 U.S. 1, 18-19 (1985)); ABA Standards for Criminal Justice, Standard 3-5.8(b) (1980) ("It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or guilt of the defendant"; "The policies underlying this proscription go to the heart of a fair trial. . . . when the prosecutor conveys to the jurors his

Hon. Nicholas G. Garaufis
June 20, 2023
Page 7 of 7

personal view that a witness spoke the truth, it may be difficult for them to ignore his views, however biased and baseless they may in fact be.").[4]

Telling the jury that Jane Doe is a victim is tantamount to telling the jury that she testified truthfully, presupposing Mr. Daskal's guilt. To protect Mr. Daskal's constitutional guaranty to a fair trial, the Court should preclude the government from using the terms "victim" or minor victim" regarding Jane Doe, and from eliciting those same terms from government witnesses.

Respectfully submitted,

/s/ IH
Henry E. Mazurek
Ilana Haramati

*Counsel for Defendant Jacob Daskal*

cc:   Counsel of Record (*via ECF*)

---

[4] Nor would precluding the government from using the terms "victim" or "minor victim" prejudice the government. In similar cases, the government has suggested referring to minor complainants by their first names, or other aliases "limiting the disclosure of their personal identifying information," apparently without use of the term "victim." *See United States v. Graham*, No. 14-CR-500 NSR, 2015 WL 6161292, at *10 (S.D.N.Y. Oct. 20, 2015) (at the government's request, "the Court orders that, at trial, any references to the Victim or uncharged victims shall be by their first names only, and, to the extent they testify, they shall be permitted to do so using their first names only.").