UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────
UNITED STATES OF AMERICA,

                -against-

JACOB DASKAL,

                          Defendant.
─────────────────────────────

**MEMORANDUM & ORDER**
**21-CR-110 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

The court is in receipt of the Government's June 21, 2023 letter requesting that the previously-ordered Federal Rule of Criminal Procedure 15 ("Rule 15") deposition of Rivka Finkel be held via videoconference. (*See* June 21, 2023 Letter (Dkt. 103).) The Defendant Jacob Daskal counters that an in-person deposition of Ms. Finkel in Israel is necessary to protect his Sixth Amendment rights to both confrontation of witnesses and effective assistance of counsel. (*See* June 22 2023 Letter (Dkt. 105); June 23, 2023 Letter (Dkt. 108).) During a status conference on June 23, 2023, the court raised the prospect of in-court testimony through via live videoconference technology ("VCT"). The Government consented to this solution, but Daskal objected.

As a preliminary matter, it is not even clear to what extent Daskal's rights under the Confrontation Clause are implicated in regard to Ms. Finkel's testimony. The Confrontation Clause of the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the *witnesses against him*." U.S. Const. amend. VI (emphasis added). Ms. Finkel is not a witness against Daskal; she is a *defense witness* who may be called to impeach a prosecution witness, Jane Doe. Daskal thus may not even enjoy a right to confront Ms. Finkel. To the extent that Daskal is actually contending that confrontation of Jane Doe requires in-person deposition testimony of

1

impeachment witnesses against her, such as Ms. Finkel, his argument is attenuated and has not been supported with any caselaw.

Even if Daskal enjoys a confrontation right against Ms. Finkel, this right does not preclude use of VCT technology here. The right to face-to-face confrontation is not absolute. *Maryland v. Craig*, 497 U.S. 836, 844 (1990). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Id.* at 845. That right "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850.

In *United States v. Gigante*, the Second Circuit weighed whether remote testimony of a government witness via two-way closed-circuit television testimony violated the defendants' confrontation rights under the Sixth Amendment. 166 F.3d 75, 79 (2d Cir. 1999). The court ultimately concluded that "[w]hile the use of remote, closed-circuit television testimony must be carefully circumscribed, [the district court] adequately protected [the defendant's] confrontation rights." *Id.* at 80. Analogizing the procedure to that used for foreign depositions under Rule 15, the court noted that "[u]pon a finding of exceptional circumstances . . . a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice." *Id.* at 81. Other courts have held that "the standard for exceptional circumstances is the same as the Rule 15 standard: the moving party must prove the witness's testimony is material; the witness is unavailable; and allowing CCTV testimony furthers the interest of justice." *United States v. Mohamed*, No. 18-CR-603 (ARR), 2020 WL 1545522, at *3 (E.D.N.Y. Apr. 1, 2020); *see also United States v. Buck*, 271 F. Supp. 3d 619, 622-23 (S.D.N.Y. 2017).

Courts in this circuit have since granted motions to allow trial testimony by two-way video technology where exceptional circumstances rendered the possibility of the witness testifying in person untenable. *See, e.g., United States v. Mostafa*, 14 F. Supp. 3d 515, 524 (S.D.N.Y. 2014) (finding exceptional circumstances where the witness refused to travel to the United States for trial due to fear of apprehension on outstanding criminal charges); April 25, 2017 Order (Dkt. 246), *United States v. Petrossi*, No. 16-CR-234-9 (BMC) (E.D.N.Y. Apr. 25, 2017) (granting a motion for a defense witness to appear live at trial via videoconference where the witness was physically unable to travel to trial). Others have done so amidst the COVID-19 pandemic. *See United States v. Akhavan*, 523 F. Supp. 3d 443, 455 (S.D.N.Y. 2021) (finding the need to prevent a witness's serious illness or death amidst the COVID-19 pandemic to be an exceptional circumstance); *see also* October 13, 2021 Minute Entry, *United States v. Won*, No. 18-CR-184-2 (RJD) (PK) (E.D.N.Y. Oct. 13, 2021); April 16, 2021 Minute Entry (Dkt. 275), *United States v. Zhukov*, No. 18-CR-633-1 (EK) (E.D.N.Y. Apr. 16, 2021); October 13, 2020 Minute Entry, *United States v. Shipp*, No. 19-CR-29 (RPK) (E.D.N.Y. Oct. 13, 2020). While this practice undoubtedly became more common during the COVID-19 pandemic, applicable law in this circuit predates the pandemic and by no means limits the use of VCT testimony to times of severe public health crisis.[1]

The court finds that this case presents exceptional circumstances. As Daskal has detailed, Ms. Finkel refuses to travel to the United States to appear at trial, despite having traveled to New York for business just this past April. (*See* Def's Rule 15 Mot. (Dkt. 82) at 3.) Daskal has made efforts to procure her presence at trial, but

---

[1] As the court stated during the June 23, 2023 status conference, Rule 15's current silence on VCT testimony does not preclude its use. As described above, multiple courts in this circuit have used VCT testimony at trial. Rule 15 was also last updated in 2012. *See* Fed. R. Crim. P. 15. It is possible that forthcoming updates will establish parameters for use of this procedure.

3

she remains unavailable. (Reply to Rule 15 Mot. (Dkt. 88) at 1.) The court was first notified of the need for a Rule 15 deposition on May 23, 2023. (*See* Def's Rule 15 Mot.) The court, and apparently the Government, were not made aware that Daskal intended to travel to Israel for the deposition until June 20, 2023. (*See* June 20, 2023 Letter (Dkt. 95).) This left the Government scrambling to organize an in-person deposition in Israel. (*See* June 21, 2023 Letter at 2.) During the June 23, 2023 status conference, the Government represented that travel to Israel would impose a substantial hardship on its trial preparation. The date of the prospective deposition remains in flux. July 10, 2023 and July 11, 2023 are currently the only workable dates, according to the parties. Both dates are within one week of the start of trial on July 17, 2023. Given the witness's refusal to travel to trial, Daskal's late notice of his intent to hold the deposition in Israel, and the substantial hardship of holding a deposition in Israel the week before trial is scheduled to begin, this court finds that exceptional circumstances are present.[2]

Daskal's protestations that the Confrontation Clause compels an in-person deposition do not alter this conclusion.[3] Again, even if applicable, the right to face-to-fact confrontation is not absolute. *Craig*, 497 U.S. at 844. The Second Circuit in *Gigante* clearly laid

---

[2] To the extent that the exceptional circumstances inquiry overlaps with that for Rule 15 depositions, the court notes its previous finding that the Rule 15 criteria were met in regard to Ms. Finkel's testimony. (*See* June 12, 2023 Minute Entry.)

[3] Daskal also argues that his right to have counsel present at critical stages of trial, per the right to effective assistance of counsel, further compels an in-person deposition of Ms. Finkel. (June 22, 2023 Letter at 2.) Indeed, a criminal defendant possesses a right to have counsel present for critical stages of trial. *See United States v. Cronic*, 466 U.S. 648, 659 (1984). Daskal has, however, failed to present this court with any caselaw suggesting that *presence* for effective assistance purposes can only be satisfied through *in-person, physical presence*. (*See* June 22, 2023 Letter at 2.)

out criteria whereby this right could be abridged in favor of virtual testimony at trial. Concerns over reliability of evidence against a criminal defendant are also reduced in this case because the witness at issue is a *defense witness*. She would not be called to levy testimony against Daskal; the defense seeks to call Ms. Finkel to proffer testimony helpful to their case. Indeed, Defense counsel has interviewed Ms. Finkel on multiple occasions, and is fully aware of the testimony she intends to give at trial. The risk that she will wrongfully implicate an innocent defendant is already reduced by her very role in this trial. *See Gigante*, 166 F.3d at 81. It is difficult to ascertain what value, if any, face-to-face confrontation with Daskal's attorneys will serve to further mitigate the risk of false testimony against him.[4]

Daskal also articulates no case-specific prejudice that would arise from use of VCT technology. He notes that VCT is vulnerable to technological problems and interruptions. (June 23, 2023 Letter at 1.) But this is an objection to use of VCT technology as a general matter, not an explanation of specific prejudice that its use would pose here. Under Daskal's argument, this technology could never be used to effectively present trial testimony. Courts in this circuit have evidently disagreed. The parties could also work together to ensure that Ms. Finkel is in a controlled environment during live VCT testimony and is accompanied by staff who may address any technological problems should they arise.

The court also views VCT testimony as preferable to pre-recorded video testimony in a number of ways. First, Ms. Finkel's testimony via VCT would be directly responsive to Jane Doe's trial

---

[4] As the court noted during the June 23, 2023 status conference, Daskal himself would not be permitted to travel to Israel for an in-person deposition of Ms. Finkel due to the conditions of his release. He will face her virtually regardless of whether she is deposed in Israel or appears at trial via VCT. Any benefits of confrontation that Defense counsel speaks of pertain to face-to-face confrontation by Daskal's attorneys, not Daskal himself.

5

testimony, whereas her pre-recorded deposition testimony would not be. Given that Ms. Finkel would be proffered to impeach the credibility of Jane Doe, her testimony would be more probative if given after hearing Jane Doe's.[5] VCT testimony also better approximates in-person trial testimony than a pre-recorded video deposition. "In some regards, CCTV provides more of the characteristics that the Supreme Court has deemed significant to the Confrontation Clause. For instance, the demeanor of a witness is apparent for the trier of fact to see live." *Mostafa*, 14 F. Supp. 3d at 520. Given that the jury is the ultimate trier of fact tasked with assessing Ms. Finkel's credibility, any further insight into her demeanor at trial is undoubtedly preferable. While Daskal argues that Defense counsel may lose some ability to observe Ms. Finkel's demeanor through VCT testimony, as compared to an in-person deposition, the court is more concerned with the jury having insight into Ms. Finkel's demeanor than Defense counsel. This is especially true given that Defense counsel has already interviewed Ms. Finkel on multiple occasions and has already had opportunity to assess her demeanor.

Accordingly, the court DENIES Daskal's request to take a Rule 15 deposition of Rivka Finkel in Israel. Ms. Finkel will be permitted to testify at trial via VCT, subject to this court's decision on admissibility of her testimony. The parties are DIRECTED to contact Magistrate Judge Bloom to coordinate the logistics of live VCT testimony. At trial, the court will aim to emulate the procedures that the Second Circuit endorsed in *Gigante*. *See* 166 F.3d at 80 ("The closed-circuit television procedure utilized for [the witness's] testimony preserved all of these characteristics of in-court testimony: [the witness] was sworn; he was subject to full cross-

---

[5] Similarly, because Ms. Finkel's testimony would be offered to impeach Jane Doe through prior inconsistent statements, (Def's. Rule 15 Mot. at 5), the court will not be able to determine its admissibility until Jane Doe testifies.

examination; he testified in full view of the jury, court, and defense counsel; and [the witness] gave this testimony under the eye of [the defendanat] himself.").

SO ORDERED.

Dated:   Brooklyn, New York
         June 26, 2023

s/Nicholas G. Garaufis<br>
NICHOLAS G. GARAUFIS<br>
United States District Judge

7