

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EMR/GN                                    *271 Cadman Plaza East*
F.# 2018R02232                            *Brooklyn, New York 11201*

October 3, 2023

By ECF

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Jacob Daskal
>        Criminal Docket No. 21-110 (NGG)

Dear Judge Garaufis:

The government respectfully submits this letter in advance of the upcoming sentencing of the defendant Jacob Daskal, which is scheduled for October 11, 2023, at 11:00 a.m.  For the reasons set forth below, the government respectfully requests that the Court sentence the defendant to a term of imprisonment at the top-end of the agreed-upon guidelines range set forth in the July 14, 2023 plea agreement between the parties (the "Plea Agreement") of 168 to 210 months' imprisonment and five years' supervised release.

I.    Offense Conduct

The government agrees with the detailed description of the offense conduct set forth in the Presentence Investigation Report ("PSR").

In summary, in 2017, when he was 59 years old, the defendant abused his position of power in the Orthodox Jewish community in Borough Park, Brooklyn to sexually exploit a 15-year-old girl (the "Victim") who was also a member of that community.  PSR ¶ 5.  At the time of the charged conduct, the defendant was the founder and chief of the Borough Park Shomrim Society (the Shomrim), a private, Orthodox Jewish crime-patrol group associated with the 66th Police Precinct of the New York City Police Department (NYPD).  Id.

The Victim was connected to the defendant by other members of their shared community in the spring of 2017, when the Victim was having issues with her family.  Id. ¶ 6.  The Victim lived with the defendant and his wife for a short time that spring and started living with them permanently over the summer and early fall of 2017.  Id.  Beginning shortly after they met, the defendant kept in close telephone contact with the Victim.  Id.   He told her that he loved her, that she was safe with him, and that she should refer to him by a Yiddish term for father.  Id. ¶ 11.

The sexual abuse began in or about August 2017, when the Victim was living with the defendant and his wife at their summer house in upstate New York.  Id. ¶ 8.  One day, the defendant asked the victim to come to his bedroom and proceeded to lock the door, remove the Victim's shirt, and insert his fingers into her vagina while also putting his penis in her hand.  Id.  The abuse continued throughout the summer, including other times when the defendant touched the Victim in his upstate New York home and made her perform oral sex on him at his home and on drives in the surrounding area.  Id.  The defendant also brought the Victim back to Brooklyn with him and sexually abused her in his home, including by having sexual intercourse with her, having her perform oral sex on him, and penetrating her with sexual objects.  Id. ¶ 9.  The defendant transported the Victim between upstate New York and Brooklyn by way of New Jersey.  Id.

Throughout their relationship, the defendant instructed the Victim to delete messages between them and threatened her not to tell anyone about their relationship, telling her that no one would believe her if she did.  Id. ¶ 11.  The defendant regularly referenced his relationships with law enforcement as evidence of his power over the Victim.  Id.

In the fall of 2017, the Victim relocated to Chicago, Illinois.  Id. ¶ 10.  While she was in Chicago, the defendant communicated with the Victim via text message and over Skype, and requested that she pose nude for him and send him nude photographs.  Id.

On November 5, 2017, the defendant visited the Victim for a one-day trip, and sexually abused her again.  Id. ¶ 12.  He took her to a hotel room in Chicago for sexual intercourse and oral sex, before flying back the same day.  Id.  Soon thereafter, the Victim reported the relationship with the defendant to a classmate, who reported it to the school's principal.  Id.  In fear of the defendant, the Victim recanted to the school principal, and was then expelled from the school and eventually sent to Israel.  Id.

The defendant kept in touch with the Victim when she was in Israel and even visited her there.  Id. ¶ 13.  When the Victim showed up to their meeting accompanied by a

2

friend, the defendant paid the friend to walk away so that he could be alone with the Victim. Id.

In the spring of 2018, the Victim returned from Israel. Id. ¶ 14. After the defendant continually tried to contact her, she confided in a mentor who helped her report the defendant's actions to the police. Id. On May 10, 2018, the Kings County District Attorney's Office received an indictment from a grand jury in the Kings County Supreme Court charging the defendant with Rape in the Third Degree and related crimes. Id. The defendant was arrested by NYPD outside of his Brooklyn residence on that same day. Id.

On February 26, 2021, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with three federal crimes stemming from his abuse of the victim, and he was arrested on that indictment on March 4, 2021. Id. ¶ 14. On June 16, 2023, a grand jury in the Eastern District of New York returned the instant superseding indictment charging the defendant with one count of using an interstate facility to coerce a minor to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2422(b) (Count One) and one count of transportation of a minor with intent to engage in criminal sexual activity, 18 U.S.C. § 2423(a) (Count Two). See ECF No. 96.

On July 14, 2023, the Friday before jury selection was set to begin, the defendant pleaded guilty to Count Two of the superseding indictment, charging him with Transportation of a Minor with Intent to Engage in Criminal Sexual Activity, in violation of Title 18, United States Code, Section 2423(a). PSR ¶ 1.

II.    The Guidelines Analysis

The United States Sentencing Guidelines ("U.S.S.G" or "Guidelines") calculation, as set forth in the PSR, is as follows:

| | |
|---|---|
| Base Offense Level (§ 2G1.3(a)(3) | 28 |
| Plus: Minor in Custody and Care of the Defendant (§ 2G1.3(b)(1)(B)) | +2 |
| Plus: Undue Influence (§ 2G1.3(b)(2)(B)) | +2 |
| Plus: Use of a Computer (§ 2G1.3(b)(3)(A)) | +2 |
| Plus: Commission of a Sex Act (§ 2G1.3(b)(4)(A)) | +2 |
| Plus: Pattern of Prohibited Sexual Contact (§ 4B1.5(b)(1)) | +5 |
| Minus: Acceptance of Responsibility (§ 3E1.1(a)) | -2 |

3

|  |  |
|---|---|
| Total Adjusted Offense Level | <u>39</u> |

PSR ¶¶ 19-30.  The total adjusted offense level is 39, which, based on a criminal history category of I, carries an advisory Guidelines range of 262 to 327 months in custody, and a statutory mandatory minimum sentence of 10 years' imprisonment.  <u>Id.</u> at ¶¶ 74-75.

As per the parties' Rule 11(c)(1)(C) plea agreement, the Office and the defendant agreed that a specific sentence within the Guidelines range of 168 to 210 months' imprisonment, followed by a period of supervised release of five years, is the appropriate term of imprisonment and term of supervised release in this case.   As the government explained during the plea proceeding, this negotiated Guidelines range is based upon the following calculations:

|  |  |
|---|---|
| Base Offense Level (§ 2G1.3(a)(3)) | 28 |
| Plus: Minor in Custody and Care of the Defendant (§ 2G1.3(b)(1)(B)) | +2 |
| Plus: Commission of a Sex Act (§ 2G1.3(b)(4)(A)) | +2 |
| Plus: Pattern of Prohibited Sexual Contact (§ 4B1.5(b)(1)) | +5 |
| Minus: Acceptance of Responsibility (§ 3E1.1(a)) | -2 |
| Total Adjusted Offense Level | <u>35</u> |

On July 14, 2023, the Court accepted the defendant's plea to Count Two of the Indictment, subject to the terms of the parties' Rule 11(c)(1)(C) agreement.  See 7/14/23 Plea Transcript, at 19-39.

III.    <u>The Appropriate Sentence</u>

The government respectfully requests that the Court impose a sentence at the top-end of the agreed-upon guidelines range of 168 to 210 months' imprisonment and five years' supervised release.

The government believes that a sentence at the top of end of the agreed-upon range in the Plea Agreement is warranted in this case.  As an initial matter, the nature and circumstances of the charged offense are devastating and merit a substantial sentence.  Over a period of months, the defendant—who wielded enormous power within the Orthodox community—methodically groomed an exceedingly vulnerable 15-year-old girl in his care, sexually abused her, and then threatened her to prevent her from exposing his crimes.  He did all of this knowing exactly how vulnerable the Victim was and that she literally had no one, including her family, to turn to for help.  The fact that the defendant chose to add to her

4

trauma, rather than help her, is reason enough to impose this substantial sentence on the defendant.



The defendant's history and characteristics also weigh in favor of a substantial sentence. Notwithstanding the defendant's lack of prior criminal history, his actions in this case were the product of a planned and conscious effort to manipulate and groom the Victim over time. Moreover, although the defendant has emphasized his previous charitable works throughout the charged time period, the defendant abused both his position in the Victim's life and his position of power in their shared community for his own sexual gain. The defendant has submitted letters from himself, his family and community, all indicating the positive influence he has on the Orthodox community. The government does not seek to undermine any efforts by the defendant to efforts to improve and benefit his community. But there can be no denying that, at the same time, the defendant used his position of power to inflict serious mental, emotional and physical harm on a vulnerable underaged victim, who belonged to the same community he promised to serve and protect.

Indeed, the defendant used the legal system as both a sword and a shield to take advantage of the Victim: he touted his connections to law enforcement to intimidate the Victim, while also relying on the deep reluctance of individuals in the Orthodox Jewish community to report other members of that community to secular law enforcement. As the Victim states in her impact letter, and as the government would have demonstrated at trial, the Victim was kicked out of her religious school after the truth of her relationship with the defendant was disclosed to the school principal. For years, the Victim was also shunned by members of her Orthodox community for speaking the truth and reporting the defendant to the authorities. The defendant benefited from this backlash against the Victim. In fact, even though he was well aware of the Victim's isolation from her own community, he did not take responsibility for his action until recently.

In sum, a fair consideration of the Section 3553 factors, including the need to impose a sentence that reflects the seriousness of the offense, provides just punishment for

the defendant and promotes respect for the law and general deterrence, weighs in favor of a substantial sentence.  As previously noted, the defendant's conduct was deliberate, compulsive, and incredibly damaging, and merits serious punishment. ███████████

███████████████████████████████████████████████████████

██████████████████████ A sentence at the top-end of the agreed-upon guidelines range of 168-210 months' will send the message to the defendant and the public that crimes such as these will not go unpunished and that victims will be heard.

IV.     Conclusion

For all of these reasons, the government respectfully submits that a sentence at the top-end of the agreed-upon guidelines range of 168 to 210 months' imprisonment and five years' supervised release is an appropriate resolution, and respectfully requests that the Court accept that resolution and impose that sentence.

Respectfully submitted,

BREON PEACE
United States Attorney

By:      ___/s/_____
Erin Reid
Genny Ngai
Assistant U.S. Attorneys
(718) 254-7000

6